PATTERSON v. RABB.

1. STATUS QUO—PURCHASER.—P. purchased a mortgage on a tract of land
from the mortgagee, who afterwards acquired title to this land.  R.
then brought action against the owner for recovery of this land, and
filed *lis pendens*.  Still later, P. brought action against the owner, to
foreclose his mortgage, and, under a decree for foreclosure, purchased and
obtained possession.  Finally, R. was adjudged entitled to the land, and
the sheriff was directed to put her into possession.  In action then insti-
tuted by P. against R. (which was the first action to which both were
parties), the Circuit Judge did not err in restraining the sheriff from pro-
ceeding, under the order to put R. into possession, until this case was
determined.

2. A FINDING OF FACT by the Circuit Judge, unsupported by any testimony,
reversed.

3. MORTGAGES—EVIDENCES OF DEBT.—In this State, a mortgage is a mere
security for a debt; and notes, bonds, and mortgages are evidences of the
debt, but not the debt itself.

4. ASSIGNEE OF MORTGAGE—EQUITY OF THIRD PERSON.—The statutes and
decisions of this State recognize a well marked distinction, in the rights of
assignees, between negotiable instruments and those which are not negoti-

able. Bonds and mortgages are choses in action, and the assignees thereof
are not protected by the equity of purchasers for valuable consideration
without notice. Therefore, the *bona fide* assignee of a bond and mortgage,
without notice of an outstanding claim by a third person to the subject of
the mortgage, of which claim the mortgagee and assignor (the former
legal owner of the land) had notice, cannot set up such mortgage to defeat
the claim of such third person. *Cases reviewed.*

5. EQUITY—CANCELLATION OF PLAINTIFF'S DEED.—Plaintiff, who held a title
   deed to a tract of land, having failed, on the merits, in his action to
   restrain defendant from interfering with plaintiff's possession, and defend-
   ant's title being confirmed, the court directed the plaintiff's deed to be
   cancelled.

6. CASE CRITICISED.—*Dearman* v. *Trimmier*, 26 S. C., 506, explained by Mr.
   Chief Justice McIver.

   MR. JUSTICE McGOWAN, *dissenting.*

Before WITHERSPOON and FRASER, JJ., Fairfield, July,
1890, and November, 1891.

This was an action by Giles J. Patterson (continued after his
death by M. Virginia Patterson, his devisee,) against Cassandra
H. Rabb, Edwin J. Rabb, and H. Y. Milling, as sheriff. The
exceptions to Judge Witherspoon's order, maintaining the
*status quo* pending the action, were as follows: 1. For that his
honor erred in enjoining the defendants, Cassandra H. Rabb
and Edwin J. Rabb, trustee, from collecting the rents of the
premises described in the complaint. 2. For that his honor
erred in ordering the possession of the said premises restored
to the plaintiff. 3. For that his honor erred in refusing to
dissolve the order of injunction granted by him on the *ex parte*
motion of the plaintiff on the 12th day of July, A. D. 1890.

The exceptions to Judge Fraser's decree were as follows: 1.
Because his honor erred in holding that the plaintiff in this
case is entitled to protection as a *bona fide* purchaser for valua-
ble consideration. 2. Because his honor erred in holding,
"that, to the extent of his mortgage, the plaintiff's title was
good, and that he has a right to the possession of the premises."
3. Because his honor erred in holding that "the plaintiff can-
not be turned out of possession under any proceeding to which
he was not a party;" whereas, he should have held, that his

possession, as against these defendants, was wrongful and without authority of law, he having taken possession after the filing of *lis pendens* in the case. of Cassandra H. Rabb *v.* David R. Flenniken and Thos. W. Rabb. 4. Because his honor erred in adjudging that the defendants herein be perpetually enjoined from disturbing the possession of the plaintiff or his tenant by virtue of any order or execution issued under the case of Cassandra H. Rabb and others against David R. Flenniken and Thomas W. Rabb. 5. Because his honor erred, in that he should have held, that the plaintiff, being the assignee of a non-negotiable instrument, took the same subject to all the equities that could have been asserted against it in the hands of his assignor. 6. Because his honor erred, in so far as his statement or finding of facts in this case would implicate the defendant, Cassandra H. Rabb, in the breach of trust, which it has been adjudged was committed by David R. Flenniken and Thomas W. Rabb. 7. Because his honor erred, in so far as his finding of fact in the case implies that there was due on the plaintiff's mortgage the amount for which the said premises were sold to him at the sale by the clerk of the court in the case of Patterson *v.* Brice, assignee.

*Messrs. Ragsdale & Ragsdale,* for appellants.

*Mr. A. S. Douglass,* contra.

The assignee of a mortgage is entitled to the protection of a purchaser for valuable consideration without notice. 14 N. J. Eq., 213; 82 Am. Dec., 244. See, also, 29 N. J. Eq., 415; 6 Cranch, 133; 31 N. J. Eq., 231; 18 Johns., 513; 9 Am. Dec., 235; 9 Pa., 399; 49 Am. Dec., 566. The case of an assignee of a bond and mortgage is expressly ruled in *Livingston* v. *Dean*, 2 Johns. Ch., 479. See, also, 2 Phila., 269; 68 Pa., 216; 44 *Id.*, 258; 18 *Id.*, 394; 2 Devlin Deeds, § 1009; 130 Mass., 52; 15 Am. & Eng. Enc. L., 860; 2 Pom. Eq. Jur., § 767. Where it is held, that the assignee of a mortgage takes it subject to the equities of third persons, the rule is restricted in its application to some claim or right to the mortgage itself, or agreement as to its lien, and does not include an equity relating to the title

of the mortgagor to the mortgaged premises. 2 Pom. Eq. Jur., § 714.

The decisions of our courts in this State seem to recognize the rule, that the assignee of a bond and mortgage, while he takes them subject to the equities existing in favor of the mortgagor at the time of the assignment, is entitled to the protection of a purchaser for a valuable consideration, when he has no notice of the equities of third persons. 2 S. C., 244; 24 *Id.*, 183; 4 Rich. Eq., 105; 22 S. C., 10; 18 *Id.*, 473. To the extent of the mortgage, the plaintiff's title was good, and he has a right to the possession of the premises bought under his foreclosure proceedings, and he cannot be turned out of possession under any proceeding to which he was not a party. 6 Cranch, 133; 47 Me., 513; 16 Wall., 276.

April 18, 1893.   The opinion of the court was delivered by

MR. JUSTICE POPE.   Mary Regina Holley, by her deed dated the 18th day of December, 1867, conveyed a tract of land, containing 412 acres, situated in Fairfield County, in this State, to Thomas W. Rabb, in trust for his wife Cassandra during her life, and at her death to be delivered to such issue as the said Cassandra may have living at her death, to be held by such issue absolutely and discharged from all further trust. Under such deed said lands were taken possession of by such trustee.   This deed was duly recorded, and contained a power to the trustee to make any changes of investment of such trust estate as he may think proper, after the written consent therefor of the said Cassandra, such changes of investment to be subject to the same trusts as original tract of land conveyed.

On the 20th day of February, 1877, the said Thomas W. Rabb, as trustee, with the written consent therefor of the said Cassandra, conveyed the tract of land in question, and for $1,600 paid and secured to be paid as the consideration, unto David R. Flenniken in fee simple, alleging in said deed that the same was made in pursuance of the power in the deed made by Mrs. Holley.   This deed and the written consent of Cassandra, the wife of the trustee Rabb, were duly recorded, and the said David R. Flenniken went into possession of said lands.

On the 27th day of December, 1879, David R. Flenniken, by his deed therefor, conveyed said lands to Wade Pickett in fee simple for $2,500. This sum of $2,500 was secured to be paid by Wade Pickett, by his bond payable to Flenniken, in the penal sum of $5,000, conditioned to pay the said $2,500 in five equal instalments, and by a mortgage of the premises. Both the deed and the mortgage were duly recorded. On the 1st January, 1880, this bond and mortgage, for value, were assigned to Giles J. Patterson. On the 4th day of February, 1881, Wade Pickett, conceiving his inability to pay his bond for the purchase money, reconveyed, by his deed therefor, the tract of land to David R. Flenniken in fee simple.

On the 23d day of July, 1884, Cassandra H. Rabb, as plaintiff, exhibited her complaint in the Court of Common Pleas for Fairfield County against David R. Flenniken and Thomas W. Rabb, as trustee, as defendants, to set aside the deed made by Thomas W. Rabb, as trustee, to David R. Flenniken, on the 20th February, 1877, on the ground that her trustee had thereby and therein been guilty of a breach of trust, with a fraudulent intent, participated in, if not contrived, by the said David R. Flenniken. A notice of *lis pendens* was duly filed in the office of the Clerk of Circuit Court for Fairfield County, on the 20th day of July, 1884.

On the 5th day of December, 1885, the said David R. Flenniken, in view of his insolvency, by deed conveyed his whole estate, including expressly this tract of land, to James A. Brice, for the benefit of his creditors.

On the 27th January, 1887, Giles J. Patterson, as plaintiff, began his action to foreclose the mortgage assigned to him by Flenniken, against James A. Brice, as assignee of the estate of David R. Flenniken, as defendant, on which judgment of foreclosure was rendered on the 13th June, 1887, and lands ordered sold on the first Monday in October, 1887, and at such sale on that date were bought by the plaintiff, Giles J. Patterson, for the sum of $550. At this sale notice was given publicly that Mrs. Cassandra Rabb owned the land. Deed was made by clerk of court to Patterson, and he went into possession of the land immediately thereafter.

On 20th day of February, 1890, the judgment of the Supreme Court was handed down in the action of Cassandra Rabb against David R. Flenniken and Thomas W. Rabb, trustee, whereby it was held that the sale by Rabb, as trustee, to Flenniken, was unauthorized, being in breach of duty, and that Flenniken should hold the said lands as a trustee, subject to all the trusts and limitations of the deed from Mary Regina Holley to Thomas W. Rabb, trustee, until such time as the court should thereafter appoint a person trustee for Mrs. Rabb and her children; and that when such new trustee was appointed, Flenniken should convey said lands to the newly appointed trustee, under the order of court therefor. See 29 S. C., 278; 32 S. C., 194. On the 26th day of March, 1890, by the decretal order of Judge Norton, Edwin J. Rabb was appointed the new trustee, in lieu of Thomas J. Rabb, and David R. Flenniken was ordered to convey by deed the said lands to such new trustee, upon the same trusts and limitations that are set up in the original deed of trust from Mrs. Holley. And that when the deed was executed, the sheriff of Fairfield County should put the said Edwin J. Rabb, or his authorized agent, in possession of said lands, against the said Flenniken, "or any one else who may have come into possession of the same" since the 20th July, 1884, when the *lis pendens* was filed. David R. Flenniken made the deed referred to on 1st April, 1890, and on 12th July, 1890, the sheriff of Fairfield County, H. Y. Milling, was called upon to execute the order of Judge Norton. His deputy had left his office for this purpose, and had ejected Giles J. Patterson, through his tenant then in possession, before such deputy knew that this present action was begun. The present conflict was thus begun, and, as must be apparent, is one of interest.

On 12th July, 1890, Giles J. Patterson, as plaintiff, against the defendants (who are here as appellants), in his complaint sets out such of the foregoing facts as he conceived sustained his right to procure a judgment restraining any and all persons who claim through, or act for, Cassandra H. and Edwin J. Rabb, as trustee, from any interference with his possession of the tract of land in question. Such plaintiff claims that when he received

the bond and mortgage executed by Wade Pickett to David
R. Flenniken, he paid the full marketable value therefor,
without any notice whatsoever of any adverse claims thereto
by any one else; that he caused the offices at Winnsboro to be
searched by an attorney, and was assured by such attorney that
Flenniken's title and Pickett's title to the land was good; that he
is, and was from the 1st January, 1880, entitled to the protection
of a purchaser for valuable consideration without notice, as
the assignee of the aforesaid mortgage; that he was not a party
to the suit of Cassandra Rabb against Flenniken, and had no
information or notice of any claims set up by her in her said
suit until after the assignment of Flenniken in December,
1885; that in October, 1887, when he purchased said lands at
foreclosure sale, he was notified of Mrs. Rabb's rights therein.
On the same day (12th July, 1890,) Judge Witherspoon granted
an order of restraint against any of the parties interfering
with Giles J. Patterson's possession of the land until the case
should be heard upon the merits.

The answer of the defendants deny that Patterson is entitled
to be considered as holding the bond and mortgage of Pickett,
by assignment of Flenniken as the assignee, by purchase thereof
for full value without notice, and that the doctrine in equity
of innocent purchaser for a valuable consideration without
notice, cannot be maintained by the said Patterson, because he
is merely the holder of a *chose in action*, which, under the laws
of this State, is unnegotiable, being under seal; and, therefore,
his rights under his holding are only such as his assignor,
Flenniken, held, and that Flenniken, as the obligee in the
bond of Pickett to him, held said bond in fraud of the trust
estate created by the deed of Mrs. Holley in 1867, of which he
had full notice.    Besides this, the defendants claim that Pat-
terson ought not to be considered as having the right to main-
tain his present suit, because of the *lis pendens*, filed on the 20th
July, 1884, as required by law.

The testimony was taken by Mr. McCants as special master.
In addition to the records and deeds hereinbefore indicated, it
was established by the testimony of Flenniken himself, that
when in 1877 he received the deed for this land from Thomas

W. Rabb, as trustee, the $1,600 purchase money was paid by him in Rabb's individual debt, by note of $425, and the balance was paid in supplies and cash furnished by Flenniken to Rabb. The cause was heard by Judge Fraser, and by his decree he sustained the equity of Patterson, to have the mortgage of which he was the assignee considered as held by him as a purchaser for a valuable consideration without notice, and superior to the equities of the trust estate. Giles J. Patterson having died pending the hearing before Judge Fraser, by consent an order was made on 7th January, 1892, substituting his widow, Mrs. M. Virginia Patterson, as trustee for herself and children as plaintiff.

The defendants appeal from the order of Judge Witherspoon of 12th July, 1890, and from the decree of Judge Fraser. As these two sets of exceptions will be set out in the report of the case, we will not reproduce them here.

We will consider the exceptions to Judge Witherspoon's order. These exceptions, three in number, cannot be sustained. Under the view we take of this case, Giles J. Patterson being in possession of the lands in question, and deriving his rights to such possession under an instrument executed prior to the suit of Mrs. Cassandra H. Rabb, to which suit he was not a party, he was not bound by the decree in this last cause. It was necessary that the rights of the respective parties to the present cause should be passed upon by the courts, and under such circumstances the *status quo* of the parties should have been preserved pending such decision of the antagonistic claims to the land held by the parties to this controversy. This was covered by the order of Judge Witherspoon, and no more. Let these exceptions be overruled.

We will next consider the exceptions to the decree of Judge Fraser. Inadvertently, no doubt, by his decree Judge Fraser gives the appellants ground to complain by his finding as a fact that Mrs. Cassandra H. Rabb was implicated in the breach of trust committed by David R. Flenniken and Thomas W. Rabb. There was no testimony to this effect, and, therefore, the exception numbered 6, relating to this matter, is sustained.

10—38

The remaining six exceptions may be so grouped as to be considered together, for they all relate to conclusions of the Circuit Judge in the matter of the equities of Patterson, growing out of the bond and mortgage assigned to him on 1st January, 1880, by Flenniken. In justice to the learned judge, we will reproduce a part of his decree relating to this subject: "The main question which arises on this state of facts is whether the plaintiff is entitled to protection as a *bona fide* purchaser for valuable consideration without notice, and if so, to what extent. I will not attempt to follow counsel through the elaborate and interesting review of the authorities. I will state my conclusions briefly, as well as my reasons for them. In *Haynsworth* v. *Bischoff*, 6 S. C., 159, it was held that a mortgage of lands is within the rule which protects a purchaser for valuable consideration without notice. In reference to the rights of an assignee of a mortgage, I find this laid down in Leading Cases in Equity, vol 2, part 1: 'In *Mott* v. *Clark*, the mortgagee had notice at the time of taking the mortgage that the mortgagor was a mere trustee for the defendants, and the question was whether the subsequent assignment of the mortgage without notice for valuable consideration invested the assignee with the rights of a purchaser, and entitled him to a recovery against the defendants. And it was held by the court that, although a mortgage might be so far considered a mere chose in action or security for the debt as to be discharged by equities between the mortgagor and mortgagee, against which the assignee might protect himself by making inquiry of the former at the time of the assignment, yet that with regard to the equities of third persons the case was different, and an assignment for value was to be regarded as a purchase, and it was consequently decided that the mortgage was good in the hands of the assignee. not only against the equities of the defendants, which bound it in the hands of the assignor, but against a deed from the mortgagor to the defendants, and which the latter had *neglected to put on record*' [italics ours]. In Leading Cases in Equity, vol. 2, part 2, at page 240, it is said, that 'this doctrine in *Mott* v. *Clark* and other cases, accords with the doctrine in *Livingston* v. *Dean* and *Murray* v. *Lyburn*, laid down by Chancellor Kent;

and must be regarded as law, notwithstanding the more recent cases in New York the other way.' '

"In this State, a mortgage is a mere security for a debt, and the case or *Haynsworth* v. *Bischoff*, *supra*, in which it is held that a mortgagee is a purchaser for valuable consideration without notice, and is within the rule, effectually settles the question as to whether in this State a mortgagee should have the legal title, as in some States he has, in order to entitle him to that protection which equity gives to an innocent purchaser without notice. An innocent assignee has all his rights. In *Maybin* v. *Kirby*, 4 Rich. Eq., 105, the contest was between several assignees of the stock of an incorporated manufacturing company. The case was decided according to the well known principles as in those cases in which this doctrine applies, and there was no case of a want of notice made out. I think that the statement that a chose in action is not within the rule, is a mere *dictum*, and must be regarded as not law, after *Haynsworth* v. *Bischoff*, *supra*. I, therefore, hold that, to the extent of the mortgage, the plaintiff's title was good, and that he has a right to the possession of the premises bought under his foreclosure proceedings, and that he cannot be turned out of possession under any proceedings to which he was not a party."

There is no longer any room to doubt that, in view of the repeated adjudications in this State, a mortgage is only to be regarded as a mere security for a debt. Care must always be taken to remember that a bond, or note, or mortgage (when the last describes the indebtedness), is not the debt; these, respectively, are merely evidences of the debt. It sometimes happens that the bar of the statute of limitations, or that of bankruptcy, is a discharge of the evidences of indebtedness, but do not destroy the debt. However, usually, whatever discharges or satisfies the debt renders null any securities for such debt. *Nichols* v. *Briggs*, 18 S. C., 485.

Quite a distinction exists in the law as between choses in action which are negotiable and those that are unnegotiable. This distinction has given rise to a diversity of opinion, both by lawmakers and by courts. It is not at

all surprising, therefore, that citations may be readily made
of decisions of courts in favor of either view of this subject.
Our State has uniformly, both in the legislature and our courts,
regarded this difference as substantial and fixed.    To avoid the
inconveniences arising from this fixed status of obligations
under seal not being negotiable, although assignable, the act of
1798 (5 Stat., 330,) was passed.    The preamble of that act
recognizes that bonds, sealed notes, &c., are unnegotiable, and
the body of the act authorizes assignees of such unnegotiable
instruments to sue thereon in their own names as assignees;
but so careful was the legislature that the consequences attend-
ant upon unnegotiable instruments should not be avoided by
this new right conferred upon the assignees thereof, that this
proviso was attached: "Provided, nevertheless, that nothing
in this act contained shall be construed to preclude any de-
fendant in such action from the advantage of any discounts or
defences which he or she would have been entitled unto, had
the action been brought in the name of the obligee or obligees
of said bond or bonds, or payee or payees of said note or notes,
bill or bills."    Also, Code of 1870, 14 Stat., 450, §§ 134 and 135;
Code 1882, §§ 132, 133.

Our courts have enforced these fundamental distinctions be-
tween negotiable and unnegotiable chose in actions, both in
law and in equity.    *Hodges* v. *Connor*, 1 Speer, 120; *Whitesides*
v. *Wallace*, 2 *Id.*, 163; *Waring, as assignee*, v. *Cheeseborough and
Campbell*, 1 Hill, 187; *Cantey, as executor*, v. *Blair*, 1 Rich. Eq.,
49; *Holbrook* v. *Colburn*, 6 Rich. Eq., 299; *Bobo* v. *Vaiden*, 20
S. C., 281; *Moffatt* v. *Hardin*, 22 *Id.*, 9.    Both bonds and mort-
gages are choses in action.    Our courts, both before *Haynsworth*
v. *Bischoff*, 6 S. C., 159, *supra* (decided in 1875), and since that
case, have held that choses in action, under seal, were not
within the rule, whereby equity will protect a purchaser for a
valuable consideration without notice.    1st.  As we have seen,
our statutes expressly make them, in the hands of assignees,
subject to discounts or defences of defendants.    2d.  The cases
now cited so held.

In *Hodges* v. *Connor*, *supra*, a note under seal was sued on.
It seems that when Connor executed the note to Hodges (the

consideration being for land sold), he held a note for $145 against Hodges. Afterwards Hodges wished to trade with another, and objection being made to the form of Connor's sealed note, it was renewed by Connor in unobjectionable form. After Rosamond held the note, it again passed into the hands of Hodges, who sued upon the same, and Connor, as a second defence to such note, pleaded his $145 note in discount. The allowance of the discount was objected to. The Court of Appeals held: "But we think the defendant was entitled to his discount to the amount of the note of $145 and interest. This action is brought by Hodges on a paper payable to himself, and, as such, must be liable to all the discounts against it by the party executing it; although, in conscience, Rosamond ought to have the paper freed from any such demand, as he took it like a demand payable to himself. At the time, however, he received the paper, he could have secured this advantage by making it payable to himself; but having failed to do so, he and those claiming under him must take and hold the single bill subject to all the legal disadvantages incident to it." In *Whitesides* v. *Wallace, supra,* which was an action on a lost sealed note, the court held: "That the note in this case is a sealed note, which is not a negotiable instrument. It may be assigned, under the act of 1798, but the assignee takes it subject to any *bona fide* defence which might be set up against the payee."

In *Waring, as assignee,* v. *Cheeseborough and Campbell, supra,* which was an action by the plaintiff, as assignee, for full value of the assignee of the obligees of a bond, the obligees were guarantors also of the bond assigned. The defence was failure of consideration. At the trial it was proved that Cheeseborough and Campbell, named as obligees in the bond, and who assigned the bond to Withers, were the sureties of Smith, the obligor in the bond, and that the bond was made by them in that form to Withers for negroes and two plantations. Some ten of the negroes sold were not the absolute property of Withers. The defence of failure of consideration prevailed. In *Cantey, as executor,* v. *Blair, supra,* the facts were about as follows: Henry T. Cantey had executed a sealed note, payable to James W.

Cantey. Afterwards he executed a second sealed note to the same party. James W. Cantey assigned these notes to Blair for value without notice. Henry T. Cantey having died, Blair sued his executor to judgment on these sealed notes. After judgment, Blair assigned a proportionate part of each to Mr. McWillie and Mrs. McKinon. The executor of Henry T. Cantey having learned, after judgment against him, that James W. Cantey had made payments on such sealed notes, and had another defence—that of usury—filed a bill in equity for appropriate relief against Blair, McWillie, and Mrs. McKinon. These last (McWillie and Mrs. McKinon) interposed the plea, that they were purchasers for full value without notice. The court denied them that privilege, saying: "It is very clear that the assignee of a judgment cannot be placed on a better footing than the assignor."

In *Holbrook* v. *Colburn*, 6 Rich. Eq., 299, *supra*, the court said: "The honest obligee of a bond is liable to be defeated of satisfaction by proof of fraud, mistake, or want of consideration affecting the obligation." The complainant in this case, who was the assignee of the obligee, failed in his suit. *Bobo* v. *Vaiden*, 20 S. C., 281, *supra*, was an action decided in 1883. In this case, the assignee of the interest in an estate of a distributee thereof, which distributee was a surety on the bond of the administrator of such estate, invoked the doctrine of an innocent purchaser for valuable consideration without notice, to the effort of creditors of the estate of the intestate to apply the share of such distributee, Mrs. Vaiden, to the payment of her liability as surety on the bond of the administrator, he proving insolvent. This court held: "If Mrs. Vaiden were now suing the estate for her share, is there any doubt that her liability as surety would be set off before anything was paid to her? Has the assignee any higher right? The demand is a mere chose in action, and in such cases the admitted rule is, that the assignee takes the interest assigned, subject to all the defences, both legal and equitable, against the assignor. Wait Ann. Code; Lynch's Code, sec. 135.

In *Moffatt* v. *Hardin*, 22 S. C., 9, *supra*, Hardin executed to Melton a sealed note and mortgage of land. This sealed note

and mortgage were assigned to the plaintiff and James Hemphill. When due, an action in foreclosure was begun by the assignees. Mrs. Hardin interposed as a defence to such sealed note and mortgage in the hands of these assignees, that Melton, the obligee, was indebted to her at the time the sealed note was executed. The assignees replied vigorously to this defence, that they were entitled to the protection of the rule of innocent purchasers for full value without notice, and also that the negligence of Mrs. Hardin in giving Melton a receipt for $1,245, when no money was paid, and also giving him an assignment of her distributive share of her father's estate, in the hands of the clerk of the court, had acted prejudicially to such assignees, who knew of both instruments. Yet, under these pleas, this court held that Mrs. Hardin was entitled to her defence. Mr. Justice McGowan, in delivering the opinion of the court in this case, said: "It is said, however, that this is not an action to enforce these securities by Melton or his personal representative, but new parties have been introduced; that Melton, without making the proper credits on the note and mortgage, assigned them for full value, and without notice to the plaintiffs, who are now entitled as innocent purchasers to enforce them in the condition in which as assignees they received them, without regard to the omission of Melton to credit them, in accordance with his agreement. This would certainly be true, if the securities were negotiable in their nature, and had been transferred before due for full value and without notice. See the recent case of *First National Bank of Parkersburg* v. *Johns*, 46 Am. Rep., 516, where a great number of the authorities are collected. But the bond and mortgage assigned here were not negotiable securities transferred before due, but mere choses in action, and very different principles apply. They are not subject to the doctrine of implied warranty and of purchaser for valuable consideration without notice. *Maybin* v. *Kirby*, 4 Rich. Eq., 116."

This last cited case (*Maybin* v. *Kirby, supra,*) is not regarded by the Circuit Judge as throwing much light upon the question he was discussing, because there was notice. This is quite true; yet, when it is remembered that the principles there dis-

cussed were those of the present cause except in the matter of notice, the decision has an important bearing. Suffice it to say, what may be termed *dicta* in that case have, since that time, and after *Haynsworth* v. *Bischoff*, 6 S. C., 159, *supra*, was decided, become matters adjudicated as the law of this State. It seems to us that the learned Circuit Judge has attached undue importance to *Haynsworth* v. *Bischoff*, for in that case the mortgagee, Bischoff & Co., was found to be entirely innocent of any knowledge of wrong, while, in the case at bar, Flenniken, the mortgagee, was not only cognizant of the breach of trust but participated largely therein, so that it was impossible for him to be considered, as was Bischoff & Co. in the other, an innocent mortgagee without notice. The Circuit Judge is quite right in his decree when he says, "an innocent assignee has all his (mortgagee's) rights." That is exactly the doctrine of our courts. But he ought to have gone further, and said that, under our law, an innocent assignee of a chose in action under seal takes such chose in action subject to all the infirmities in and against his assignor.

This is not only the rule in our State, but it is that observed in the Supreme Court of the United States. *Carpenter* v. *Longan*, 16 Wall., 271. It is true, that this last cited case referred to a negotiable note, which the mortgage secured, yet the court in its judgment said: "The case is a different one from what it would be if the mortgage stood alone, or the note was unnegotiable, or had been assigned after maturity." This case is approved in *Kenicott* v. *The Supervisors*, 16 Wall., 469: "It has been decided at the present term of this court, that when a note secured by a mortgage is transferred to a *bona fide* holder for value before maturity, and a bill is filed to foreclose the mortgage, no other or further defences are allowed as against the mortgage than would be allowed were the action brought in a court of law upon the note. *Carpenter* v. *Longan*, *supra*." It is thus seen, not only is the theory and practice of our own courts on the subject of unnegotiable choses in action approved by the Supreme Court of the United States, but also the flexibility of a mortgage, as that it may be adapted to the fate of the note, negotiable or not negotiable, it is intended to

secure.   We might enlarge on all these points, but it is not deemed necessary to say more.   It follows, therefore, that the judgment of the Circuit Court is erroneous, and that the present decree must be reversed.

It is the judgment of this court, that the judgment of the Circuit Court be reversed, and that the cause be remanded to the Circuit Court, with directions that a decree be there made, denying the plaintiff the relief prayed for, and requiring the land in dispute to be delivered up to Edwin J. Rabb, trustee, and further requiring the deed to Giles J. Patterson from the clerk of the Circuit Court for Fairfield County for the land in question to be cancelled.

MR. CHIEF JUSTICE MCIVER.   I concur.   And I desire to add, that while the proposition that the assignee of a mortgage may avail himself of the plea of purchaser for valuable consideration without notice, does seem, impliedly, at least, to be recognized in *Dearman* v. *Trimmier*, 26 S. C., 506, which plea, however, was allowed on another ground, the question, so fully discussed by Mr. Justice Pope, was not raised or considered in that case, in which the result *only* was concurred in.

MR. JUSTICE MCGOWAN, *dissenting.*   The facts of this case are so fully stated in the Circuit decree,[1] that they need not be restated.   See, also, the case of *Rabb* v. *Flenniken*, twice reported, in 29 S. C., 278, and 32 S. C., 189.   All that is necessary at present is to keep clearly in view the dates of the different transactions.   (1) On December 18, 1867, was executed the deed of Mary Regina Holley, conveying a tract of land to Thomas W. Rabb, as trustee, giving power of sale, reinvestment, &c. (2) On February 20, 1879, the trustee Rabb conveyed about 400 acres of the aforesaid land to David R. Flenniken in fee, without reinvesting the proceeds of sale, according to the terms of the trust deed.   (3) On December 27, 1879, Flenniken, being in possession of the land, sold and conveyed it to one Wade Pickett for $2,500, taking Pickett's bond and mortgage of the

---

[1] Quite as fully stated in the opinion by Mr. Justice Pope.—REPORTER.

premises to secure the purchase money. (4) On January 1, 1880, the said bond and mortgage were duly transferred by Flenniken to Giles J. Patterson, who, first having the records examined, and being informed by a lawyer that the title was good, and having no notice whatever of any secret vice in it, paid Flenniken for the same in cash the full market price thereof. (5) On February 4, 1881, Pickett concluded to abandon his purchase, and conveyed back to Flenniken the equity of redemption in the land.

Down to this point, nothing was heard of any hidden equity to the land, or affecting the legal title to it. (6) But on January 23, 1884, action was commenced by Cassandra H. Rabb and her children then living, to set aside the conveyance of her trustee to Flenniken as a fraudulent breach of trust, Thomas W. Rabb, her trustee, and Flenniken being alone made parties defendant. *Lis pendens* was filed, long litigation followed, the result of which will be referred to hereafter. (7) On December 5, 1885, Flenniken, being embarrassed, executed to one James A. Brice an assignment of his property, including the equity of redemption in the aforesaid tract of land, for the benefit of his creditors. After this assignment, Giles J. Patterson brought an action against *Brice*, the assignee of creditors, to foreclose the mortgage assigned to him. He made no one a party but Brice, but filed notice of *lis pendens.* A decree of foreclosure was rendered, and the land sold under an order of court on October 5, 1887. When the property was offered for sale, notice was given of the claim of the defendants. The land was bid off by Patterson, the holder of the mortgage, for less than was due on the bond and mortgage. Titles were made to him by order of the court, and he was let into the possession.

The proceeding of Mrs. Rabb to set aside the deed of her trustee to Flenniken was not finally decided until 1889, when a judgment was entered that Flenniken should hold the said trust tract of land subject to the trusts in the original Holley deed. The parties obtained an order from Judge Norton appointing Edward J. Rabb trustee, and requiring Flenniken to execute and deliver to the new trustee a deed of the aforesaid premises upon the original trusts. That was done; and the

sheriff, under the order of the court, was about to deliver to the substituted trustees possession of the premises, when Giles J. Patterson instituted this action to enjoin the sheriff and the other defendants from thus proceeding, praying that the effort to deliver possession of said premises may be declared to be null and void, that the plaintiff may be restored to the possession of said premises, and that the defendants may be restrained from interfering in any way with the possession of the plaintiff or his tenants, &c.   A supplemental complaint was filed, to prevent the tenant of the plaintiff from attorning to and paying over the rents to the attorney of the trustee and *cestui que trust*, which repeated the prayers of the original complaint, "and for such other and further relief as may be just and equitable." After the trial of the case, but before the decree was filed, the plaintiff departed this life, and the name of his executrix, M. Virginia Patterson, was by order of the court substituted as plaintiff.

The cause was heard by his honor, Judge Fraser, who held "that, to the extent of the mortgage, the plaintiff's title was good, and that he has a right to the possession of the premises bought under his foreclosure proceedings, and that he can not be turned out of possession under any proceeding to which he was not a party.   At the same time, I am inclined to the opinion that, under the foreclosure proceeding, and after the filing of notice of *lis pendens*, and express notice of the claims of the trustee and *cestui que trust*, he did not purchase such a title as would extinguish the equity of redemption existing in favor of the trust estate; and that the trustee has still a right to redeem the mortgage.   I do not, however, see how that can be accomplished in this action, as the answer sets up no such claim, and makes no offer to redeem.   James A. Brice held subject to this mortgage, and also to the trusts of the original deed.   This decree, therefore, must be without prejudice to any action the trustee and his *cestui que trust* may hereafter be advised to bring for the redemption of the mortgaged premises," &c.

From this decree the defendants appeal to this court upon the following exceptions: [See *ante*, p. 139.]

There is some confusion in this case, arising from the fact

that Mrs. Rabb filed her complaint against the trustee and Flenniken, without making Patterson, who held the mortgage, a party; and, on the other hand, Patterson, in his foreclosure proceedings, impleaded no one but Brice, assignee, for the creditors of Flenniken, without any reference whatever to the claim of Mrs. Rabb and her children. So that, although both parties proceeded in their respective lines to judgment, really the main question between the parties was not touched by either. The court, therefore, in these cases was not informed of all the facts, and there can be nothing in the judgment of either of them like an adjudication of the point now to be considered. It is elementary and fundamental, that no one is bound by the judgment in a case to which he was not a party. The conflict, however, as to the actual possession of the premises made this action necessary, in which, for the first time, the claimants are brought face to face before the court. The question is an important one—whether Patterson, the purchaser for full value of the bond and mortgage from the mortgagee, is entitled to the protection of a purchaser for value without notice; and its consideration should not be embarrassed by anything which, it might be supposed, was decided in the cases referred to.

In order to prevent confusion, therefore, we will go back to the time when Mrs. Rabb filed her complaint to set aside the deed, which her trustee, with her consent, made to Flenniken (January 23, 1884), and see how the matter then stood. At that time Patterson was in possession of the bond and mortgage, having purchased the same for full value some years before, with no notice whatever of any claim on the part of third persons of any hidden equity in the land mortgaged. The claim as developed was a mere equity, and the question is whether Patterson could defend himself against it by the higher equity of innocent purchaser for value. There is no positive law creating or defining that plea, but it is purely equitable. If Patterson had taken a conveyance of the land from Pickett, instead of an assignment of the purchase money mortgage given to Flenniken, I suppose that there would have been no doubt as to his right to protect himself by the plea.

Wherein does this case differ in principle from the one stated? We think, in this State, it is settled, that "A mortgagee of lands is a purchaser within the meaning of the rule which protects a purchaser for valuable consideration without notice." See *Haynsworth* v. *Bischoff*, 6 S. C., 159.

This seems to be conceded, but it is said that the case of Haynsworth and Bischoff did not go so far as to include the assignee of a mortgagee; that in such case the mortgage being merely an unnegotiable chose in action, another principle intervenes, viz: that the assignee takes subject to all equities which may be developed as to the land mortgaged. It is true, that the case of Bischoff did not, in express terms, embrace the case of an assignee of the mortgagee; but we do not see why the principle decided does not apply. It has been considered, that although a mortgage might be so far considered as a mere chose as to be discharged by equities between the mortgagor and mortgagee, against which the assignee might protect himself by making inquiry of the former at the time of the assignment, yet that with regard to the equities of third persons the case was different, and an assignment for value was to be regarded as a purchase. There has been discussion on the subject, and possibly difference of opinion, but we do not propose to reopen the argument. We agree with the Circuit Judge, on the force of the authorities cited by him in his decree, that to the extent of the mortgage the plaintiff's title was good. We also concur in his intimation, that Patterson, at the sale of the land under his foreclosure suit against Brice, did not purchase such a title as would extinguish the equity of redemption existing in favor of the trust estate. We hold, *first*, that to the extent of the mortgage the plaintiff's title was good, but that the purchase and conveyance at the foreclosure sale in the case of Patterson *v.* Brice did not carry to the purchaser the equity of redemption in land. *Second*, that the trustee and *cestui que trusts* have the right to redeem the premises in question, by paying the balance due upon the mortgage debt, after allowing, of course, all proper credits of payments, rents, &c. *Third*, that unless the defendants take action to redeem the land in a reasonable time, the plaintiff, or his representative, disregard-

ing the former foreclosure proceedings, may proceed anew to foreclose his mortgage on the land in question, giving, of course, all just credits on the mortgage debt. The injunction to stand in the meantime only to maintain the *status quo.* I think the judgment below should be affirmed.

Judgment reversed.