This cause was referred to me by order of the Court, dated June 8, 1925, directing me to take the testimony, and to hear and determine all issues raised by the pleadings, and report the same to the Court, with leave to report any special matter. Accordingly, I have been attended by counsel engaged in the cause, and herewith report the testimony taken, with all exhibits attached.
This cause was originally instituted by the plaintiff against Mary M. Padgett and J.S. Padgett, through Howell Gruber, plaintiff's attorneys; the summons and complaint and lis pendens being filed October 20, 1914. The defendants duly answered, Padgett Moorer, their attorneys. Thereafter for some reason, Messrs. Howell and Gruber were withdrawn as attorneys for the plaintiff, and the cause was conducted by Mortimer M. Jarecky, as attorney for the plaintiff. Mr. Jarecky obtained an order of the Court amending the complaint and dropped J.S. Padgett as a defendant and inserted in lieu thereof the other named defendants above.
A history of the cause will appear from the facts found by me as follows:
The defendant Mary M. Padgett is the wife of J.S. Padgett, and will be hereinafter referred to as Mrs. Padgett. At the time of the transactions hereinafter referred to, she was a merchant and farmer, and her husband acted as her agent in the conduct of her business. *Page 276 
On January 20, 1909, by mortgage recorded on February 13, 1909, Book 30, page 181, she mortgaged to C.F. Rizer a tract of 103 acres of land in Warren township, Colleton County, hereinafter referred as to the 103-acre tract.
In 1912, she bought a bill of goods from C.H. Schneider and Jake Schneider, copartners doing business under the firm name of C.H. Schneider Bro., of Augusta, Ga., amounting to about $700.00 or $800.00, and, in order to secure the payment thereof, she executed and delivered to the said C.H. Schneider and Jake Schneider her note in the sum of $700.00, secured by a mortgage on the said 103-acre tract; mortgage being dated August 24, 1912, recorded on September 12, 1912, in Book 25, page 127, R.M.C. office for Colleton County.
On March 28, 1913, Messrs. Howell Gruber, as attorneys for the Schneiders, commenced an action to foreclose the said note and mortgage, under one cause of action, and under the other cause of action to attach for the purchase money the said bill of goods. The action was brought against Mary M. Padgett and C.F. Rizer; the said C.F. Rizer holding the prior mortgage aforementioned. Under a writ of attachment, dated April 7, 1913, issued thereon, L.G. Owens, sheriff of Colleton County, through his deputy sheriff, L.C. Padgett, with the assistance of Jake Schneider, on April 7, 1913, attached and took manual possession of so much of the said goods as remained on hand, boxed and crated the same, and carted them away for safekeeping. Mrs. Padgett desired to have the attachment relieved, and repossessed herself of the attached goods, and to that end it was agreed between her and the said Schneider brothers, through the said Jake Schneider and Messrs. Howell Gruber, attorneys for the said Schneider brothers, that she should give the said Schneider brothers her bond in the sum of $620.00, in full settlement of the account, and secured the same by the first mortgage over 120 acres of land in Colleton County, S.C.; it being contracted and agreed that the said attachment *Page 277 
should at once be relieved and the goods so attached should be redelivered to her and the mortgage aforementioned on the 103-acre tract of land immediately satisfied of record. In pursuance of this agreement, J.S. Padgett, being personally present and negotiating therefor, she executed and delivered to the said Jake Schneider and C.H. Schneider, copartners as C.H. Schneider Bro., her bond and mortgage dated April 8, 1913, recorded on April 21, 1913, in Book 29, page 91, covering the said 120 acres of land; the same being a first lien thereover. The said Schneider agreed to forthwith satisfy the said mortgage over the 103 acres of land. Thereupon the said attachment was relieved and the goods attached redelivered to her, but the said Schneider did not satisfy the said mortgage over the 103-acre tract of land.
M.P. Howell, of the firm of Howell Gruber, was the attorney acting for the Schneiders, and he made repeated efforts to procure the satisfaction of the 103-acre mortgage, but failed to get it from the said Schneiders. Mrs. Padgett, through her husband, became apprehensive that an advantage was being taken of her in the matter of the satisfaction of the old mortgage, and repeatedly appealed to Mr. Howell to secure the satisfaction for her, and finally Mr. Howell, on August 25, 1913, in order that Mrs. Padgett might be protected, wrote to the said J.S. Padgett, her husband, as follows:
"Walterboro, S.C. August 25, 1913.
"Mr. J.S. Padgett, Walterboro, S.C.
"Dear Sir: Replying to your inquiry as to the mortgage held by Schneider Bro., I beg to say that my understanding of the transaction is that the new mortgage given by you to Schneider Bro., satisfied all other claims by them against you, including the old mortgage held by them covering the other lands.
"Yours very truly,
"M.P. HOWELL." *Page 278 
Mrs. Padgett, through her husband, made personal efforts to secure the satisfaction of the old mortgage, and her husband went so far as to make a personal trip to Augusta, and tendered to the said Schneider Bros. the satisfaction fees under the statute. The Schneiders, at the time of the said tender, asserted that the new mortgage was given as additional collateral thereto, and they refused to satisfy the old mortgage.
Thereupon Mrs. Padgett, under date of January 31, 1914, commenced an action in the Court of Common Pleas against C.H. Schneider and Jake Schneider, to compel the satisfaction of the old mortgage, and for damages. The return of the sheriff of Richland County shows that the summons and complaint in that action was served personally on C.H. Schneider and Jake Schneider, in Augusta, Ga., on February 5, 1914. In this action, Messrs. Padgett and Moorer were attorneys for Mrs. Padgett.
Under date of February 5, 1914, Mr. S.H. Myers, as attorney for the Schneider brothers, addressed the following letter to Messrs. Padgett Moorer:
"Dear Sirs: Your summons in complaint in re Mary M.Padgett v. C.H. and Jacob Schneider has just been handed me by Mr. Jake Schneider. My client is at a loss to understand these proceedings as the mortgage which you seek to have cancelled in your complaint has been signed forwarded to Messrs. Schneider's attorneys of your city, Messrs. Howell Gruber. I would ask that you see them upon receipt of this letter, as there is no doubt some misunderstanding about the matter.
"Yours very truly,
"S.H. MYERS.
"P.S. I am not at all sure whether this cancellation has been executed as stated above because at the time of its receipt, about the middle of the last month, Mr. C.H. Schneider was sick in a sanitarium in New York and did *Page 279 
not return to the city until last week, when cancellation was properly executed and returned to Walterboro."
Under date of February 24, 1914, Messrs. Howell 
Gruber, as attorneys for the Schneiders, served notice on Messrs. Padgett Moorer, plaintiff's attorneys in that action, of a motion to set the service of the summons aside on the ground that defendants were nonresidents and the Court could not acquire jurisdiction; the action being inpersonam, and the service being made out of the State of South Carolina. No further steps seem to have been taken in that action.
The following month, under date of March 16, 1914, the plaintiff in this action, Max Tunkle, wrote Mrs. Padgett that he had bought from the Schneiders the $620.00 mortgage, and asking for the payment thereof as the same became due; the first installment not yet being due, but being due the following month. Mrs. Padgett seems to have had some communication with Mr. Tunkle, for, under date of April 21, 1914, Tunkle replied that he had seen Mr. Jake Schneider and told him that the "Rizer papers" (evidently referring to the 103-acre mortgage, Rizer holding the first mortgage) were in the hands of his lawyer at Walterboro, and for him to see his lawyer, that Schneider never had those papers. He further stated that the Schneiders needed some money and Tunkle had bought the 120-acre mortgage. Tunkle offered to accept the face value, $620.00, in settlement.
Mrs. Padgett, in the meantime, was using every effort to secure the satisfaction of the 103-acre mortgage, for the reason that she had received an offer of $1,300.00 for the tract of land, but the purchaser would not comply for the reason that he could not secure the satisfaction of that mortgage. Had this mortgage been satisfied, Mrs. Padgett would have been able to have sold the property for $1,300.00, which would have been a sufficient amount to have paid up both the Rizer debt and also the mortgage to Schneider, over the 120-acre tract, under which Tunkle claims. Being unable *Page 280 
to secure the satisfaction of the 103-acre mortgage and to thereby sell the property and pay the mortgage and debt to Mr. Rizer, Mrs. Padgett was unable to settle with Rizer. On January 29, 1915, Rizer commenced an action to foreclose his mortgage on the 103-acre tract. In this action, the Schneiders were made parties defendant, and were served by publication, which including the mailing of the copy of the summons and complaint to them at Augusta, Ga., on February 4, 1915. To this foreclosure action brought by Rizer the Schneiders defaulted. The Court gave judgment in favor of Rizer for $693.52, and ordered the premises sold. The Court further decreed that the Schneider 103-acre mortgage had been paid and ordered the same satisfied by the clerk of Court. Thereafter the 103-acre tract was sold under order of the Court, at public outcry, on November 1, 1915, to C. F. Rizer, for the sum of $700.00.
The present action was commenced on the 120-acre mortgage on October 20, 1914, by Messrs. Howell Gruber, as attorney for the plaintiff, Max Tunkle. Mr. and Mrs. Padgett, who were parties defendant, answered. Thereafter, after the answer came in, for some reason, Messrs. Howell Gruber were withdrawn as plaintiff's attorneys, and the action was carried forward by Mr. Jarecky, the attorney for the plaintiff.
It should be noted that the answer of Mr. and Mrs. Padgett set up substantially the aforementioned facts. They alleged that the plaintiff was not the bona fide owner of the said note and mortgage, but that he reached an assignment thereof in collusion with the Schneiders in order to keep the said Schneiders out of the jurisdiction of the Court, and thereby avoid the defense and counterclaim which Mrs. Padgett might have against the Schneiders. In view of the facts which Mr. Howell had noted in his letter aforesaid, and his efforts to secure the satisfaction of the 103-acre mortgage, it might be presumed that he gave up the conduct of the case for the plaintiff in order to keep from being a *Page 281 
party to the transaction which the plaintiff and the Schneiders were attempting to perpetrate on Mrs. Padgett.
Thereafter Mr. Jarecky had the summons and complaint amended by dropping J.S. Padgett as a party defendant and inserting instead as defendants the several judgment creditors of Mrs. Padgett. Mrs. Padgett answered, and by her answer contended that the 120-acre mortgage sued upon was given in satisfaction of the 103-acre mortgage and in order to have the merchandise released from the attachment, that she had fully performed her part of the contract, but that the said Schneider brothers had claimed that the 103-acre mortgage was still of force, and refused to perform their part of the contract by satisfying the said 103-acre mortgage acted fraudulently, with the intent to defraud and cheat her; and she alleged that the said 120-acre mortgage was without consideration or value, and was void, and further that the plaintiff, Max Tunkle, with full knowledge of the fraud and deceit, had entered into the collusion with the said Schneiders to cheat and defraud by taking the mortgage without value from the Schneiders, in order that the said Schneiders might avoid submitting themselves to the jurisdiction of the Court. She further alleged that, by reason of the failure of the said Schneider brothers to comply with their part of the contract in the manner aforesaid, she was prevented from selling the property and was unable to borrow funds thereon, and that she had lost the 103-acre tract of land through foreclosure by Rizer, all to her damage in excess of the amount of the 120-acre mortgage.
To this answer Tunkle replied, by his attorney, Mr. Jarecky, and claimed to be an innocent purchaser thereof, and denied any collusion or fraud.
All the defendants except Mary M. Padgett and Bamberg Banking Company defaulted to this amended complaint.
At the hearing before me, the plaintiff, Max Tunkle, and also Jake Schneider testified. The testimony of Mr. Tunkle is especially unsatisfactory. It is vague, contradictory, and *Page 282 
evasive, and shows a lack of memory and of record. While the testimony of Mr. Schneider is more definite, I am forced to the conclusion, considering all the facts and circumstances, that at the time the said Jake Schneider, acting for himself and his brother in procuring the execution and delivery of the bond and mortgage sued upon, and agreeing to satisfy the 103-acre note and mortgage, they did so in order to induce the defendant to execute and deliver the bond and mortgage sued upon, and with the intention at that time not to cancel and satisfy the 103-acre note and mortgage. Under these circumstances, their refusal to cancel and satisfy the 103-acre note and mortgage is fraud, and therefore the execution and delivery of the 120-acre mortgage induced by the said promises, are void.
The following is taken from the case of Palmetto Bank Trust Co. v. Grimsley, 134 S.C. 493, 133 S.E., 437, 438, 51 A.L.R., 42, filed May 20, 1926:
"In Coleman v. Stevens, 124 S.C. 8, 117 S.E., 305, the Court adopted the statement by his Honor, Judge Edward McIver, in his charge to the jury:
"`A future promise is not fraudulent, unless such a future promise was part of a general * * * scheme to induce the signing of a paper or to make one act, as he otherwise would not have acted, to his injury.'"
In 12 R.C.L., 257, it is said: "So, if through inducements held out by one person, even by means of a promise alone, another is influenced to change his position so that he cannot be placed in statu quo and will be seriously damaged unless the promise is fulfilled, then the refusal to perform is fraud. There is even authority to the effect that false representation as to future events will constitute fraud, where those events depend upon the acts of the party making the representation and form the inducement whereby the other party is led into the transaction."
"When a promise is made with no intention of performance, and for the very purpose of accomplishing a fraud, it *Page 283 
is a most apt and effectual means to that end, and the victim has a remedy by action or defence." Goodwin v. Horne,60 N.H. 485.
"A promise is usually without the domain of the law, unless it creates a contract, but if made, when there is no intention of performance, and for the purpose of inducing action by another, it is fraudulent and may be made the ground of relief." Herndon v. Durham S. Ry. Co.,161 N.C. 650, 77 S.E., 683, 685.
In Hill v. Gettys, 135 N.C. 375, 47 S.E., 449, 450, in ordering the cancellation of a mortgage the Court says: "The general rule in regard to promises is that they are without the domain of the law unless they create a contract, a breach of which gives to the injured party simply a right of action for damages, and not a right to treat the other party as guilty of a fraud. But that proceeds upon the ground that to fail to perform a promise is no indication that there was fraud in the transaction. There may, however, have been fraud in it, and this fraud may have consisted in making a promise with intent not to perform it. To profess an intent to do or not to do, when the party intends the contrary, is as clear a case of misrepresentation and of fraud as could be made."
In Braddy v. Elliott, 146 N.C. 578, 60 S.E., 507, 508, 16 L.R.A. (N.S.), 1121, 125 Am. St. Rep., 523, it is said: "If the jury should find, in addition to their findings on the first and second issues, that the defendant fraudulently induced plaintiffs to agree to the exchange by falsely representing and pretending that he would build two suitable dwellings and necessary outhouses on the tract of land, such finding would be an ample basis for the decree canceling the entire transaction. * * * The subsequent acts and conduct of a party may be submitted to the jury as some evidence of his original intent and purpose when they tend to indicate it." *Page 284 
In Nelson v. Shelby, 96 Ala., 515, 11 So., 695, 701, 38 Am. St. Rep., 116, it is said: "The failure to fulfill a mere promise or undertaking — something to be done in the future — alone, will not authorize a rescission of a contract upon the ground of fraud. It is the making of such promise, having no intention at the time to perform it, that constitutes fraud for which a contract may be rescinded. * * * Evidence of representations or promises or guaranties of enterprises to be carried out in the future were admissible only for the purpose of showing actual fraud; and to have this effect it must appear that the promisor had no intention to perform at the time they were made."
In Birmingham Co. v. Land Co., 93 Ala., 549, 9 So., 235,236, it is said: "The making of a promise, and having no intention at the time of performing it, constitute a fraud for which a contract may be rescinded."
In 26 C.J., 1092, it is said: "The general rule that failure to perform a promise is not fraud has been recognized in equity, subject to the limitation that where the promise is a mere device to defraud it will be ground for equitable relief. This redress may be had for a promise made with the present intent of future breach."
"Many authorities present the psychological nicety of holding that the making of a promise which the promisor has a present intention of breaking in the future is a misrepresentation of his present intention and therefore upon that ground may be relieved against, a plausible, if not sound analysis.
"There can be no redress unless it affirmatively appears, that at the time of making such promise the promisor acted with the purpose of deception, and misrepresented his then existing intention to perform." 26 C.J., 1095.
I find that the proof abundantly sustains the contention of Mrs. Padgett that Mr. Tunkle was not an innocent purchaser of the bond and mortgage sued upon, but that the assignment to him was without consideration and was done *Page 285 
with the purpose and intent on his part, and on the part of his friends and associates and kinsmen, the Schneiders, to keep the said Schneiders out of the jurisdiction of the South Carolina Courts, and to avoid any counterclaim which might be secured against them. Aside from this, however, Tunkle can claim no higher rights than the Schneiders would have had in enforcing the bond and mortgage. The bond and mortgage sued upon is not a negotiable instrument. While it may be assigned, the assignee takes it subject to all existing defenses. Section 355, Code of Procedure, 1922, Section 3709, Civil Code, 1922; Patterson v. Rabb, 38 S.C. 138,17 S.E., 463, 19 L.R.A., 831; British American Co. v.Smith, 45 S.C. 83, 22 S.E., 747; Willoughby v. Ray, 131 S.C. 317,127 S.E., 441; Woodrow v. Frederick, 133 S.C. 431,131 S.E., 598; Harrell v. Smith, 138 S.C. 368,136 S.E., 559, filed June 4, 1926; Tucker v. Tucker, 72 S.C. 309,51 S.E., 876; Westbury v. Simmons, 57 S.C. 480,35 S.E., 764; and many other cases which might be cited.
I therefore recommend that the summons and complaint in this action be dismissed, and that the defendant Mary M. Padgett have judgment against the plaintiff for the costs and disbursements of this action.
The defendant Bamberg Banking Company answered and set up the lien of its judgment against Mrs. Padgett, no part of which has been paid, but, as no sale is to be had under the plaintiff's mortgage, and as the said judgment will not be affected by the dismissal of the summons and complaint in this action, it is not necessary to decree anything in reference to the said judgment; the rights of the Bamberg Banking Company not being affected by this action.
 DECREE OF JUDGE BONHAM
This matter was heard by me at April, 1928, term of Court of Common Pleas for Colleton County on exceptions to the report of the Master. The history of the transactions *Page 286 
out of which this litigation arose are fully and clearly set out in the report, and need not be repeated here.
The Master held that the bond and mortgage which are sought to be collected by foreclosure in this action were procured from Mrs. Mary M. Padgett by the deceitful and fraudulent conduct of C.H. Schneider Bro., in that they promised and agreed that if Mrs. Padgett would execute and deliver to them the said bond and mortgage they would immediately mark satisfied of record another mortgage which they held against her 103-acre tract of land, which agreement they have never fulfilled, and never intended to fulfill; and that, because of this fraudulent conduct of Schneider Bro. the bond and mortgage was null and void. I do not think this issue is proper to be decided in this action between Max Tunkle and Mrs. Padgett and to which C.H. Schneider Bro. are not parties. The pleadings in regard to this issue are relevant to permit the introduction of evidence to show collusion between Tunkle and Schneider Bro., in relation to the alleged assignment, but it does not seem right to me to adjudicate the rights and interest of Schneider Bro. in an action to which they are not parties. It is urged in argument that, by reason of the fraudulent conduct of Schneider Bro., the bond and mortgage are null and void; therefore the assignee, Tunkle, took nothing by the assignment. That is begging the question; that is assuming that Schneider Bro. admit their fraudulent conduct. I do not find that they have admitted it, and they have had no opportunity to defend themselves against the charge. If Mrs. Padgett had desired to determine that question in this action, she should have had C.H. Schneider Bro. made parties to it. Mrs. Padgett unquestionably has not paid the mortgage debt; she owes it to some one, and the true owner and holder of the papers should have an opportunity to try his right to collect them. If Mrs. Padgett has a defense against the claim, she has the opportunity to set it up. If it be by way of counterclaim, *Page 287 
the plaintiff has an opportunity to reply to it. If the plaintiff shall be Schneider Bro., and Mrs. Padgett set up, by way of offset or counterclaim, that the bond and mortgage are rendered null and void because of the fraud, they should have the opportunity to defend against the charge; which opportunity they have not had, and which is not given them in this action, the adjudication of this issue in this action is premature.
I fully concur with the Master in his findings and conclusions that Max Tunkle is not the real party in interest in this action. In other words, that there was never a valid assignment to him of the bond and mortgage; that the assignment is fictitious, fraudulent, and without consideration, and was made to preclude Mrs. Padgett from setting up any defense she may have to the same. The bond and mortgage are not introduced in evidence, are not before the Court, if indeed they are in the possession of the plaintiff; there is no evidence that they are in his possession; he apparently knows nothing of their contents, nothing as to their date, the time of payment, the rate of interest they bear; he could not tell how much he had paid for the papers, nor how he had paid it. His testimony was in all respects evasive, confused, and most unsatisfactory; and that of Jake Schneider was no better. I am fully convinced that the alleged assignment is fraudulent, collusive, and without consideration, if, indeed, any assignment was ever attempted to be made. Section 354 of the Civil Code of Procedure provides that every action shall be brought in the name of the real party in interest. It follows that Max Tunkle cannot maintain this action.
It is therefore adjudged, and it is ordered and decreed, that, in so far as the report of the Master is in conflict with the conclusions and findings herein stated, the exceptions in that regard are sustained and the report overruled, and, in so far as the report is in accord with the views herein stated, the exceptions thereto are overruled, and the report is confirmed. *Page 288 
Ordered, further, that the complaint in this action be, and is hereby, dismissed, and that the plaintiffs pay the costs of the action.
May 14, 1931. The opinion of the Court was delivered by
The Court is entirely satisfied with the findings and conclusions of the Circuit Judge, and, for the reasons assigned in his decree, the same are affirmed. See, also, the opinion inHodges v. Lake Summit Co., 155 S.C. 446-450,152 S.E., 658, which was filed during the pendency of this appeal.
MR. CHIEF JUSTICE BLEASE and MESSRS. JUSTICES COTHRAN, STABLER and CARTER concur.