#### IVES *ET AL.* v. RUTLAND *ET AL.*

##### (133 S. E., 539)

1. MORTGAGES—ASSIGNEE OF OVERDUE MORTGAGE TOOK IT SUBJECT TO EXISTING DEFENSE, AND WHERE ASSIGNOR HAD AGREED TO PAY MORTGAGE, IT WAS DEAD PAPER AT TIME OF ASSIGNMENT (CODE CIV. PROC., 1922, § 355; CIV. CODE, 1922, § 3709).—Where buyer of land gave mortgage to third person, who agreed to finance purchase and pay outstanding mortgage, but he took assignment of outstanding mortgage instead, mortgage was thereby paid and became dead, and one to whom it was subsequently assigned after maturity took it subject to existing defenses under Code Civ. Proc., 1922, § 355, and Civ. Code, 1922, § 3709.

2. APPEAL AND ERROR.—It is incumbent on appellant to satisfy Supreme Court that finding of Circuit Court is against preponderance of testimony.

Before DENNIS, J., Orangeburg, March, 1925.   Affirmed.

Action by A. J. Ives and others against Mrs. M. V. Rutland, C. F. Rizer and others.   From a decree, defendant last named appeals.

The decree of Judge Dennis, directed to be reported, is as follows:

"The above case came before me upon exceptions to the master's report.   It arose from a consolidation of three cases commenced for the foreclosure of mortgages on various tracts of land belonging to the defendant, Mrs. Mary V.

Rutland. The contested matters arise over the mortgages over one of these tracts and the conflicting rights of certain of the parties in these mortgages. The mortgages referred to are one which is known in the case as the 'Baltzegar mortgage,' and to another known as the 'Boltin mortgage.' And the land covered by these mortgages is known in the case as the 'Baltzegar tract' of 49.7 acres, but frequently referred to in the case as the '50-acre tract.'

"I find the main facts in reference to these matters, stated in their chronological order, to be as follows:

"In the year 1917, this tract of land was owned by one J. F. Baltzegar. On December 10, 1917, he gave a mortgage over this land to the Farmers' & Merchants' Bank of Norway (hereinafter called the Bank of Norway) for $2,-725. This mortgage was recorded on December 19, 1917. On May 9, 1918, Baltzegar conveyed this land to W. H. Boltin for the consideration of $5,000. This conveyance was recorded on the 28th day of May, 1918. On the same day, May 9, 1918, W. H. Boltin gave to B. B. Williams a mortgage over the said land for $5,000. This was done in order to enable Williams to finance the purchase of this land for Boltin, and to enable Williams to pay the Bank of Norway for the Baltzegar mortgage and to settle with Baltzegar for the balance of the purchase price. About seven months thereafter, on December 14, 1918, Williams paid the Bank of Norway the Baltzegar mortgage, and thereupon the Bank assigned the mortgage to B. B. Williams and delivered it to him. On January 31, 1920, W. H. Boltin conveyed this land to Mrs. Mary V. Rutland for the consideration of $6,000. This conveyance was recorded on March 11, 1920. At the time of the conveyance Mrs. Rutland knew nothing about the Baltzegar mortgage, but understood that the Boltin mortgage for $5,000 covered the land. And she paid $3,000 on the purchase price of the place, and $2,000 of this money was paid to B. B. Williams on the Boltin mortgage, leaving a balance of $3,000 due on that

mortgage. On May 19, 1920, B. B. Williams assigned to
the Bank of Orangeburg the mortgage which W. H. Boltin
had given to him, with an indorsement on the back thereof
that there was a balance due thereon of $3,000. On February 28, 1922, B. B. Williams assigned to C. F. Rizer the
mortgage of Baltzegar which he had settled for with the
Bank of Norway. This assignment was made to Rizer as
collateral security for the payment of a note of about $2,-
300 for fertilizer which Rizer sold to Williams. On June
14, 1922, C. S. Rutland, the husband of Mrs. Mary V.
Rutland, gave to Rizer a written statement to the effect that
the Baltzegar mortgage which Rizer had gotten from the
Bank of Norway was correct, and that the credits thereon
were correct, and that the land covered by the mortgage was
then owned by him (C. S. Rutland). This statement was
signed by C. S. Rutland and not by Mrs. Mary V. Rutland,
who really owned the land, and there is nothing in the case
to show that Mrs. Rutland ever knew that her husband had
given this statement. On November 15, 1922, Williams
sold and transferred all his interest in the Baltzegar mortgage to Rizer. This was done in consideration of a further
advance to Williams by Rizer of about $1,500. In the fall
of 1922, Mr. Rutland, in an effort to straighten up the affairs of his wife, discovered for the first time that Rizer
had the Baltzegar mortgage, and he made a certain offer to
pay the mortgage to Rizer under the circumstances hereinafter explained in this decree.

"Rizer refused to accept this settlement offered, and on
the 13th day of December, 1923, he brought an action to
foreclose the Baltzegar mortgage, which he had obtained
by assignment from B. B. Williams. Rizer claims that this
mortgage is the first lien upon the 50-acre tract of land.
Mrs. Mary V. Rutland and the Orangeburg National Bank
made a common fight against Rizer, and contend that the
Baltzegar-Rizer mortgage has been paid, and that it does
not constitute a valid lien on the land. They claim that

when Baltzegar sold this land to Boltin, B. B. Williams was to pay for the land to Boltin, and, to enable Williams to do that, Boltin gave him a mortgage for $5,000 over the land. And out of this mortgage Williams was to pay the Bank of Norway the Baltzegar mortgage. And when Williams did this about seven months later, he should have had the mortgage marked 'paid' instead of having the bank assign the mortgage to him. Also, that when he assigned this mortgage to Rizer, the latter took no higher rights in it than Williams had, and every equity that affected that mortgage in the hands of Williams followed it into the hands of Rizer.

"But Rizer says that these parties are estopped from raising this point against him and insisting that the Baltzegar mortgage is paid, because each of them claims through Boltin and is in privity of estate with him, and they cannot claim any higher rights than Boltin could claim. And Boltin could not be heard to claim that the Baltzegar mortgage was paid, because it was his act of negligence that left this mortgage open on the record and made it possible for Williams to pass it on to Rizer as a valid unpaid mortgage. And by this act Boltin would be estopped from claiming that the Baltzegar mortgage was paid, and from asserting the principle against him (Rizer) that the assignee of a nonnegotiable instrument takes no higher rights therein than was possessed by his assignor.

"But in reply to this, Mrs. Rutland and the Bank of Orangeburg contend that Rizer cannot raise the point of estoppel against them, because he, himself, is estopped from doing that; because Rizer took the Baltzegar mortgage by assignment from Williams, and Williams would be estopped from claiming that the Baltzegar mortgage was not paid, for he received the money to pay it with, and it was his duty to pay it and mark it off the record. So, if Williams, instead of Rizer, had the mortgage, he would be estopped from saying it was not paid. And since Williams would be estop-

ped, Rizer, who stands in privity of estate with Williams, is also estopped from claiming that the mortgage is not paid.

"So, when Rizer seeks to raise the estoppel against Mrs. Rutland and the bank to prevent them from claiming that the Baltzegar mortgage is paid, these parties raise the estoppel against Rizer to prevent him from claiming that the said mortgage is not paid. So that, it is claimed, these two estoppels neutralize each other and take both estoppels out of the case. Hence, the case must be decided as if no estoppel were in it. In support of these contentions these parties cite the following authorities: Corpus Juris, Vol. 21, pp. 1139, 1183; R. C. L., Vol. 10, p. 841; Corpus Juris, Vol. 21, p. 1181, § 184.

"That leaves the case to be decided, so it is claimed, upon the other principle that Mrs. Rutland and the bank have contended for—which is that the assignee of a mortgage or other nonnegotiable instrument stands in the shoes of the assignor and takes no better title and no higher rights than his assignor had. And under this principle Rizer must lose, because his assignor, Williams, could not collect the mortgage which Rizer now holds, because that mortgage was paid to Williams by Boltin when Boltin gave to Williams the Boltin mortgage for $5,000.

"I have considered the various contentions of the parties as above stated, and I am constrained to uphold the contentions of the defendants, Mrs. Rutland and the Orangeburg Bank. The master upheld the contentions of Rizer, but I do not think the conclusions of the master are well founded. There can be no doubt that the great preponderance of the testimony shows that Boltin gave to Williams the Boltin mortgage in order that Williams might pay for the land for Boltin, and out of this mortgage Williams was to pay the Baltzegar mortgage to the Bank of Norway. And, that fact being established by the testimony, the conclusions of law as above stated, it seems to me, follow clearly therefrom.

"Against the contentions of Mrs. Rutland and the Or-

angeburg Bank, counsel for Rizer very earnestly and ably urges the decisions of *Ex parte Cockfield,* 118 S. C., 239; 110 S. E., 393. *Middleton v. Cockfield,* 113 S. C., 282; 102 S. E., 328; and the case of *Anderson v. Citizens' Bank,* 97 S. C., 453; 81 S. E., 158. But I do not think these cases are applicable to the facts in the case under consideration. In both of the cases cited, the very party who made the assignment was the party who afterwards tried to attack it and deny that the assignment spoke the truth. And the Court held that the parties were estopped from doing that. But in this case it is not the situation for here the Bank of Norway made the assignment to Williams in fraud of the rights of Boltin, and Boltin and his privies in estate, who are attacking this fraudulent assignment, took no active part therein, and surely, under these circumstances, they are not bound by this fraudulent assignment.

"Also, counsel for Rizer contends that C. S. Rutland was the agent of his wife, Mary V. Rutland, in all of the transactions that she had relating to this tract of land, and that Mr. Rutland was therefore bound by the written statement that was given by her husband to C. F. Rizer, on June 14th, 1922. That statement was in the following form:

"'Norway, S. C., June 14, 1922.

"'The Note & Mtg. given by J. F. Baltzegar to F. & M. Bank Dec. 10th, 1917, for $2,725.00 showing credits of $310.00 Jan. 1st, 1918, and $456.00 Dec. 10th, 1920, appears to be correct. Property covered by said Mortgage now belonging to me.

"'C. S. Rutland.'

"It will be noted that this statement refers to the land as belonging to C. S. Rutland, while the land really belongs to Mrs. Mary V. Rutland, his wife. Counsel for Rizer contends that the testimony established the fact that in signing this statement the husband was acting as the agent of his wife. And in support of his contention he cites the case of *Bethea v. Beaufort County Lumber Co.,* 111 S. C., 97;

96 S. E., 717.   But I do not agree with counsel that the
testimony makes C. S. Rutland the agent of his wife in
the making of this statement.   In the *Bethea Case* the hus-
band testified that he was the general agent of his wife and
manager of all her business, and the wife also testified to
this—which was not done in this case.   But, notwithstand-
ing this testimony, the Court held that it was not sufficient
to establish the relationship of agency.   And if it had not
been that the wife subsequently ratified the act of her hus-
band, the wife would not have been bound in the *Bethea
Case*.   The testimony of ratification in that case was the
knowledge of the wife that her husband had signed two
receipts for extension money for the renewal of a timber
deed, and after this knowledge she had acquiesced in his act
and allowed him to retain the money.   And no testimony
such as this is found in the *Rutland Case*.

"But it is urged by counsel for Rizer that this testimony
of ratification is supplied by the offer that was made by C.
S. Rutland in the fall of 1922, to pay Rizer for the Baltzegar
mortgage.   But the circumstances under which this offer
was made do not show that either C. S. Rutland or his wife
acknowledged the validity of the Baltzegar mortgage.   On
the other hand, they had made arrangements to borrow
money from the Joint Stock Land Bank upon long-term
payments and a low rate of interest for the purpose of tak-
ing up all the mortgage indebtedness on their land, except
the Baltzegar mortgage, which they knew nothing about
until it was discovered by the attorney who made the ab-
stract for the Joint Stock Land Bank, and in order to get
the advantage of the loan 'from this bank, and to save their
lands from impending foreclosure suits, they made the of-
fer to Rizer in the spirit of compromise and settlement, and
not because they wished to acknowledge that his mortgage
was valid and unpaid.

"Moreover, C. S. Rutland signed this receipt on June 14,
1922, after the rights of the parties in this case had become

fixed. Prior to that time the Boltin mortgage had been given to Williams and by him assigned to the Bank of Orangeburg. And certainly the rights of that bank could not be affected by this written statement after the bank had taken the Boltin mortgage. This would be true even if the statement had been made by Mrs. Rutland herself.

"Exception is also made to the amount of the attorney's fee allowed by the master to the attorney for the Rutland Savings Bank. This fee was fixed by the master at $325. The master found that $4,886.06 was due on this mortgage on January 1, 1925. I find that the attorney who lives in Columbia merely prepared the case for foreclosure and attended one reference in Orangeburg. There was no contest raised as to the foreclosure of the mortgage representd by him, and it seems to me that a fee of $250 would fully compensate him for his services, and I therefore find that amount to be a reasonable fee for this attorney.

"I, therefore, find that the testimony in this case shows that the Baltzegar mortgage was paid when B. B. Williams took it up from the Bank of Norway, and that if Williams had kept this paper he could not have collected it, and that he transferred no higher rights to Rizer in the paper than he himself had. And consequently I find that this mortgage does not constitute a valid lien on the land covered by it, and that the first lien on this land is the Boltin mortgage which is held by the Orangeburg National Bank. And I find further that a reasonable fee for the attorney for the Rutland Savings Bank is $250. In these respects the exceptions to the report of the master are sustained, and in all other respects the master's report is confirmed."

*Messrs. Carter & Kerse,* for appellant, cite: *Findings of fact by Master entitled to weight:* 131 S. C., 101; 126 S. E., 438. *In action of foreclosure payment is affirmative defense:* 128 S. C., 417; 122 S. E., 511. *Proof of agency:* 129 S. E., 778; 128 S. C., 470; 122 S. E., 488; 111 S. C., 97; 96 S. E. 717; 102 S. C., 434; 86 S. E., 815; 63 Ga.,

447; 114 Me., 177; 95 A., 942; 156 Mass., 372; 31 N. E., 484; 12 Greenl. on Ev., Sec. 63. *Where facts not in dispute agency is question of law:* 128 S. E., 423; 104 S. C., 104; 88 S. E., 370. *Negligent misrepresentation may act as estoppel:* 21 C. J., 1121. *Estoppel in pais:* 21 C. J., 1119. *Where one of two innocent parties must suffer:* 22 S. C., 356; 86 Pa., 80; 21 C. J., 1172. *Mortgage on record unsatisfied is constructive notice:* 97 S. C., 136; 81 S. E., 644; 19 R. C. L., 422. *Assignee of mortgage takes subject to existing equities: actual or constructive notice:* 20 A. & E. Enc. of Law, 2nd Ed., 1043. *Mortgage purchased and pledged to third party is valid lien against purchaser:* 131 S. C., 317; 127 S. E., 441. *Party estopped to assert equities:* 113 S. C., 283; 102 S. E., 328. *Assignee of mortgage without notice of equities will be protected:* 97 S. C., 453; 81 S. E., 158; 22 A. & E. Enc. of Law, 2nd Ed., 476.

*Messrs. Herbert & Herbert* and *Brantley & Zeigler,* for respondents, cite: *Assignee of mortgage past due takes subject to equities:* 131 S. E., 598; 131 S. C., 317; 127 S. E., 445; 100 S. C., 28; 38 S. C., 138; Code Civ. Pro., 1922, Sec. 355; Civ. Code, 1922, Sec. 3709; 8 C. J., 476; 27 Cyc., 1324. *Defense of equities may be raised as legal right:* 131 S. E., 598; 131 S. C., 317; 102 S. C., 328; 97 S. C., 453; 22 S. C., 10; 27 Cyc., 1326. *Mortgage open of record will not work estoppel:* 131 S. E., 598; 67 S. C., 432; 45 S. C., 83; 26 A., 150. *Record not examined not misleading:* 21 C. J., 1139, 1181 and 1183; 10 R. C. L., 841. *Appellant not an innocent party:* 131 S. C., 598; 131 S. C., 317; 127 S. E., 441; 26 A., 150; 1 Joyce on Defenses to Com. Paper, Sec. 625. *Case distinguished:* 111 S. C., 97. *Similar case:* 127 S. E., 441. *Limitation of rule that where one of two innocent parties must suffer:* 21 C. J., 1172; 131 S. E., 398; 28 Ga. App., 319; 110 S. E., 918; 1 Joyce on Defense to Com. Paper, Sec. 625.

*Messrs. D. O. Herbert, C. B. Elliott* and *Raysor, Moss & Lide,* also for respondents.

June 4, 1926.

The opinion of the Court was delivered by MR. JUSTICE WATTS.

This is an appeal from a decree of Judge Dennis made in the cause. Judge Dennis' decree states the facts and issues involved and will be reported.

There are 15 exceptions alleging error on the part of his Honor. The issue is the validity of the Rizer or Baltzegar mortgage. The Master found in favor of the appellant. Judge Dennis reversed the finding of the Master, and found that the mortgage had been paid and was not a lien on the land in controversy. He found in favor of the respondents. This question of fact found by the Circuit Judge has ample testimony to support the finding. The Baltzegar mortgage was paid by the Boltin mortgage, which was given to Williams.

Williams had taken the Boltin mortgage for the full amount of the purchase money that Boltin was to pay Baltzegar, and agreed to finance the matter and pay the Baltzegar mortgage. He paid the bank which held it, and had the bank assign the mortgage to him. He had agreed to pay the mortgage, which he did, but instead of having the mortgage satisfied he had the bank assign it to him. The mortgage was paid and became a dead paper when Rizer took the Baltzegar mortgage by assignment from Williams, long after it was due. He took no better title to it than Williams had. He took it subject to all existing defenses. Code 1922, Vol. 1, § 355; Code 1922, Vol. 3, § 3709. *Patterson v. Rabb,* 38 S. C., 138; 17 S. E., 463; 19 L. R. A., 831. *British American Mort. Co. v. Smith,* 45 S. C., 83; 22 S. E., 747. *Willoughby v. Ray,* 131 S. C., 317; 127 S. E., 441. *Woodrow v. Frederick* (S. C.), 131 S. E., 598.

We see no error at all in the decree of Judge Dennis as complained of. It is strictly in accordance with the law applicable to the facts as found by him, and we have decided in a number of cases that it is incumbent

upon the appellant to satisfy this Court that the finding of the Circuit Court is against the preponderance of the testimony. In this case the appellant has failed to do this.

All the exceptions are overruled, and the judgment is affirmed.

MR. CHIEF JUSTICE GARY and MESSRS. JUSTICES COTHRAN, BLEASE and STABLER concur.