11899

WOODROW v. FREDERICK

(131 S. E., 598)

1. Mortgages—Non-negotiable Bond and Mortgage in Hands of Assignee is Subject to All Equities and Defenses Existing Between Mortgagee and Mortgagor.—Bond and mortgage, given for purchase price of lot, with oral agreement that it was to be paid by commission's to become due to mortgagor from mortgagee, *held* non-negotiable instruments, and under Code Civ. Proc. 1922, § 355, subject, in the hands of assignee, to all equities and defenses existing between mortgagee and mortgagor.

2. Mortgages—Mortgagor Who Had Commission Due From Mortgagee, Under Agreement That They Should Be Applied On Mortgage, of More Than Amount of Mortgage, is Entitled to Have Mortgage Satisfied Notwithstanding Assignment.—Where mortgagor, who had given mortgage with agreement that commissions, which were to become due from mortgagee, would be applied thereon, had commission due him of more than amount of mortgage, he would be entitled to have mortgage satisfied of record, notwithstanding that mortgage had been assigned and mortgagee was deceased.

3. Evidence—Evidence That Consideration for Bond and Mortgage Was Purchase Price of House Does Not Vary Terms of Written Instrument.—Evidence that consideration for execution of bond and mortgage was purchase price of house and lot paid by mortgagee does not vary the terms of the written instrument, but simply explains nature and origin of debt.

4. Evidence—Parol Evidence May Be Given to Explain Consideration for Execution of Written Papers.—Parol evidence may be given to explain the consideration for the execution of written papers.

5. Mortgages—Defense That Commissions Due to Mortgagor Were Sufficient to Pay Mortgage According to Agreement is not Mat-

TER OF EVIDENCE, BUT SUBSTANTIAL DEFENSE.—Defense to action foreclosing mortgage that mortgage was given as purchase price for house and lot, with provision that mortgagee would apply commissions due to mortgagor on mortgage, and that commissions amounted to more than mortgage, *held* not a matter of evidence, but substantial defense based upon Code Civ. Proc. 1922, § 355.

6. MORTGAGES—CONTENTION THAT MORTGAGEE'S INDEBTEDNESS TO MORTGAGOR, WHICH WAS TO BE APPLIED ON MORTGAGE, DID NOT MATURE UNTIL ACCOUNTING AND SETTLEMENT, HELD NOT SUSTAINED BY EVIDENCE.—In action by assignee to foreclose mortgage, contention that indebtedness of mortgagee to mortgagor did not mature until accounting and settlement *held* not sustained by evidence that commissions which were to become due to mortgagor were to be applied on mortgage, and that commissions were all earned and more than sufficient to pay indebtedness.

7. MORTGAGES—DEFENSE AGAINST ASSIGNEE THAT COMMISSIONS OWED TO MORTGAGOR BY MORTGAGEE WERE TO BE APPLIED ON MORTGAGE GOOD AS OFFSET, EVEN THOUGH NOT DUE, IN VIEW OF INSOLVENCY OF DECEASED MORTGAGEE'S ESTATE.—In action by assignee to foreclose mortgage, defense that mortgagee owed commissions to mortgagor, which were to be applied on mortgage, would be good as offset, even though not yet due, in view of insolvency of deceased mortgagee's estate.

8. MORTGAGES—MORTGAGOR NOT ESTOPPED TO SET UP DEFENSE OF PAYMENT AGAINST ASSIGNEE.—Mortgagor, by placing bond and mortgage in mortgagee's hands, is not estopped from setting up defense against assignee that commissions due to him from mortgagee, which were to be applied thereon, were sufficient to pay mortgage.

9. MORTGAGES—MORTGAGOR IS NOT ESTOPPED TO SET UP DEFENSE OF PAYMENT, UNLESS HE HAD INDUCED ASSIGNEE TO PURCHASE MORTGAGE BY SOME POSITIVE ENCOURAGEMENT.—Mortgagor, to constitute an estoppel to setting up defense of payment against assignee, must have, by some positive encouragement or participation, induced assignee to purchase mortgage.

10. MORTGAGES—IGNORANT NEGRO NOT NEGLIGENT IN EXECUTING MORTGAGE OR IN FAILING TO HAVE IT SATISFIED OF RECORD.—An ignorant Negro carpenter, who signed bond and mortgage to prominent lawyer, with understanding that it was to be paid from commissions, to become due to him, *held* not guilty of any negligence in executing mortgage or in failing to have it satisfied of record.

11. ESTOPPEL—MERE SIGNING AND EXECUTING OF BOND AND MORTGAGE DOES NOT AMOUNT TO AN ESTOPPEL.—Mere signing and executing a bond and mortgage does not amount to an estoppel.

12. MORTGAGES—BURDEN WAS ON ASSIGNEE TO NOTIFY MORTGAGOR OF ASSIGNMENT AND TO MAKE INQUIRY AS TO VALIDITY.—Burden was on assignee of mortgage to have notified mortgagor of assignment, and common prudence would require making of some inquiry of mortgagor as to validity of mortgage.

13. ATTORNEY AND CLIENT—ASSIGNEE HELD TO HAVE HAD KNOWLEDGE OF MORTGAGEE, WHO WAS HER AGENT FOR COLLECTION OF INTEREST, THAT THERE WAS NOTHING DUE ON BOND AND MORTGAGE.—Where assignee of mortgage had constituted law firm, of which mortgagee was member, her agent for collection of interest, assignee must be *held* to have had knowledge obtained by law firm that interest was not being paid by mortgagor, but by mortgagee, and that there was nothing due on bond and mortgage.

Before TOWNSEND, J., Richland, May, 1924.   Affirmed.

Action by F. B. Woodrow against Joe Frederick.   From a judgment for defendant, plaintiff appeals.

The decree of the Circuit Court is as follows:

I. This case comes before me upon report of the Master for Richland County, dated April 11, 1924, and upon exceptions thereto by the defendant.   The case was argued before me fully by counsel for both parties, and I have carefully considered both the law and the facts.

II. (a) The complaint alleges an ordinary action for the foreclosure of a mortgage securing a bond for $2,750, dated December 10, 1920, payable three years from date, with interest at the rate of 8 per centum per annum, payable semi-annually on the 1st day of January and the 1st day of July of each year; the bond and mortgage having been originally given to Charles H. Barron and thereafter, on December 31, 1920, assigned to the plaintiff.

(b) The answer of the defendant admits the execution of the mortgage sued on, but alleges it was executed in pursuance of an agreement by and between the defendant Frederick and the mortgagee Barron to the effect that Barron would buy and pay for the lot, and that Frederick would repay Barron by applying on the purchase price the commissions which were to become due to Frederick for building some houses for Barron; that the sole consideration for

the execution of the mortgage was the purchase of the lot for $2,750 by Barron; that Frederick thereupon proceeded to build six houses for Barron intermittently during the years 1920, 1921, and 1922, for which his commissions on the basis of 10 per cent. of the cost of building the houses were more than sufficient to repay Barron the amount of the mortgage, as was admitted by Barron during his lifetime; that under these circumstances the assignment of the bond and mortgage to the plaintiff was a fraud on the rights of the defendant, and that the defendant was never notified by the plaintiff or any one else that the bond and mortgage had been assigned to the plaintiff until after the death of Barron in November, 1922, and that the defendant never paid any interest on the obligation to the plaintiff or to Barron, and that the mortgage should therefore be declared satisfied and the defendant discharged from liability thereon.

III. On the issues thus joined I find the following facts:

(a) In the early spring of the year 1920, the defendant Frederick, who is an ignorant negro carpenter, was employed by Charles H. Barron (who was at that time a prominent lawyer in the City of Columbia, S. C., with large business and financial interests) to build a group of houses on the 2300 block of Pendleton Street in the City of Columbia, on property belonging to the said Barron; it being understood that Frederick was to have general charge of the building and of the labor, and the ordering of materials, and that for his services he was to receive 10 per cent. of the total cost price of the houses as commissions. At the same time the defendant Frederick was contemplating the purchase of a lot situate on the 2100 block of Gervais Street in the City of Columbia, of which the price was $2,750. It was thereupon agreed by and between Frederick and Barron that Barron would buy and pay for the lot, and that Frederick would repay Barron by applying the commissions which were to become due to Frederick for the building of the houses on the amount so paid out by Barron as the pur-

chase price of the lot. This agreement was fulfilled on the part of Barron by his paying off the mortgage then existing on the property and paying the balance of the purchase money then due to the owner of the property, Kibler, and having the property conveyed to Frederick at a total cost to him of $2,650; the other $100 having been advanced on behalf of Frederick by his brother-in-law, Robinson.

(b) In pursuance of this agreement, Frederick went to work on the houses in the spring of the year 1920 and worked more or less continuously until the fall of the year 1920, at which time the houses were in large part completed except for the finishings, trimmings, painting, fences, etc. At this time, about the fall of 1920, work on the houses was somewhat suspended owing to a lack of funds on the part of Barron, but the work continued intermittently until all the six houses, which were built by Frederick, were finally and fully completed in the early spring of the year 1922, after which no further work was done or was necessary on the houses. The total cost of the houses, in accordance with the evidence presented in this case, was approximately $35,000, on which the commissions due Frederick according to the arrangement would therefore be $3,500. Barron admitted that the houses were properly built; that Frederick had performed his part of the agreement, and that the commissions due Frederick were more than sufficient to repay him for the amount which he had paid out for the lot; and that upon a settlement between him and Frederick there would be a balance coming to Frederick after deducting the cost of the lot. Barron, however, never had a final settlement or accounting with Frederick, though frequently requested so to do, and put Frederick off on the ground that he had not yet got in all of the bills for materials with which to calculate the total cost of the houses.

(c) On December 10, 1920, Barron took from Frederick the bond and mortgage herein sued upon in the sum of $2,750 to secure him for the purchase money of the lot which

he had bought and had conveyed to Frederick. This finding is based upon testimony of C. B. Elliott, one of the former law partners of Barron, who personally closed the transaction of the purchase of the lot by Barron, who afterwards prepared the mortgage herein sued upon at the request of Barron, and who witnessed the execution of the bond and mortgage by Frederick, and who testified clearly and unequivocably that the consideration for the execution of the mortgage was the purchase of the lot by Barron; that the mortgage was given to cover that consideration.

(d) The defendant Frederick also testified that Barron, in asking him to execute the mortgage, assured him that the mortgage was only intended to evidence the purchase price of the lot, and that he would soon have a settlement with the defendant, and would then deliver up the mortgage for cancellation and satisfaction. This testimony, however, relating to the transaction or communication with Barron, the plaintiff's assignor, since deceased, I have disregarded, for the reason that I think it is incompetent under Section 708 of the Code of 1922, though under the circumstances of this case where fraud is involved there is authority to the contrary. Jones on Evidence, § 774.

(e) This bond and mortgage so obtained Barron thereafter on the 31st day of December, 1920, assigned to the plaintiff, Mrs. F. B. Woodrow, Mrs. Woodrow having given her checks therefor, payable to Douglas McKay, another one of Mr. Barron's law partners, who thereupon indorsed and delivered the check to Mr. Barron, who indorsed the check in the name of the firm and deposited same to his account in the bank. At the time of the assignment, however, Mrs. Woodrow took possession only of the bond and left the mortgage in the possession of Mr. Barron or of the firm of Barron, McKay, Frierson & McCants, of which he was senior member. Mr. McKay, who testified that he was in a sense Mrs. Woodrow's personal attorney, allowed the mortgage to remain in Mr. Barron's possession, for the rea-

son that Mr. Barron told him that he had not been able to get renunciation of dower or for some other reason had been unable to get the papers completed; but, upon his withdrawing from the firm in January, 1922, he made a drastic demand for the mortgage on behalf of Mrs. Woodrow. Thereupon Barron, who had been unable to secure the renunciation of dower of Frederick's wife through Frederick, finally secured the renunciation of dower by the assistance of one Taylor. The renunciation of dower was dated January 21, 1922, on which date the mortgage was recorded, and soon thereafter delivered to Mr. McKay for the plaintiff.

(f) Mrs. Woodrow never at any time, either after the assignment of the bond or the obtaining possession of the mortgage, notified or advised Frederick that she held the bond and mortgage, nor did she or any of her attorneys make any inquiry of Frederick as to the consideration for, or the validity of, or amount due on, the bond and mortgage. She never even called on the defendant Frederick for the payment of any interest, but received the payment of the interest by checks of the firm of Barron, McKay, Frierson & McCants, which interest was so paid by the firm in July, 1921, January, 1922, and July, 1922, Mrs. Woodrow received interest on this alleged Frederick bond and mortgage from this firm, through whom she had lent out approximately at the time in question $35,000, and who acted as her agents for the collection of the interest, and in many cases for the investment of the principal of her money, and who paid the interest on these loans by their own checks to her. The defendant Frederick, however, never paid any interest or anything else to Barron on account of the bond and mortgage, except by the commissions for the work above referred to, nor did Barron ever call on him for any other payments either of interest or of principal on the bond and mortgage.

(g) I further find that defendant Frederick was an ignorant and uneducated negro, and had implicit trust and confidence in Barron, who was a man of considerable business and legal experience and of wide influence, and that, under the circumstances hereinabove set forth, it was but natural on the part of Frederick to execute the bond and mortgage at the request of Barron, and that Frederick was guilty of no negligence in so doing. On the part of Barron, however, I find that the taking of the bond and mortgage from Frederick, at the time and under the circumstances hereinabove related, and the subsequent assignment of the bond and mortgage for value to the plaintiff, without advising the plaintiff of the circumstances under which the bond and mortgage were given, and of the consideration therefor, was an attempt by Barron to raise money on papers which he knew had no value, was fraudulent, was intended to and did constitute fraud on the defendant's rights, particularly as Barron at the time of his death, was and his estate is now, hopelessly insolvent.

As to all of these facts the evidence is overwhelming and practically undisputed, and has been substantially so found by the Master, to which the plaintiff has made no exception.

### CONCLUSIONS OF LAW

IV. As a matter of law, I hold and find that the bond and mortgage herein sued upon are nonnegotiable instruments, and as such they are subject in the hands of Mrs. Woodrow as the assignee of the mortgagee, Charles H. Barron, to all the equities and defenses existing between Charles H. Barron, mortgagee, and the defendant Frederick, mortgagor. Under the facts above found, I find that there would be nothing whatsoever due to Barron on the mortgage, so that there is nothing due to the plaintiff in this case, but that the defendant on the contrary is entitled to have the bond and mortgage marked "Paid and satisfied" on the records.

The principle of law, that the assignee of a non-negotiable chose in action takes it subject to all equities and defenses which could have been set up against it in the hands of the assignor at the time of the assignment or before notice to the debtor of the assignment, is settled by an unbroken series of authorities, and has been embodied in the Code, law of South Carolina. S. C. Code, 1922, § 355; 2 R. C. L., 629, 630; 2 Jones on Mtgs. § 842, pp. 350-353; 2 Pomeroy's Eq. Juris. § 704, pp. 1415-1419.

This principle has been recognized and applied without exception in the following, among other, South Carolina cases: *Cantey v. Blair,* 1 Rich. Eq., 49. *Maybin v. Kirby,* 4 Rich. Eq., 105, 116. *Holbrook v. Colburn,* 6 Rich. Eq., 289, 299. *Sullivan v. Blythe,* 14 S. C., 621. *Gantt v. Gantt,* 15 S. C., 610. *Moffatt v. Hardin,* 22 S. C., 9. *Harris v. McCaslin,* 10 S. E., 104; 31 S. C., 420. *Patterson v. Rabb,* 17 S. E., 463; 38 S. C., 138; 19 L. R. A., 831. *British American Mortg. Co. v. Smith,* 22 S. E., 747; 45 S. C., 83. *Pittman v. Raysor,* 27 S. E., 475; 49 S. E., 469. *Bank v. Gadsden,* 33 S. E., 575; 56 S. C., 313. *McLaughlin v. Braddy,* 41 S. E., 523; 63 S. C., 433; 90 Am. St. Rep., 681. *Stevenson v. Bethea,* 47 S. E., 71; 68 S. C., 246.

In the case of *Moffatt v. Hardin, supra,* which was a case almost on all fours with the case at bar, in which the original mortgagee, being indebted to the defendant, assigned the bond and mortgage to the plaintiff, who took the same for value and without notice of any defect in the securities, the Court used this forceful language:

"This principle has been expressly embodied in Section 133, Revised Code, which declares that, 'In the case of an assignment of a thing in action, the action by the assignee shall be without prejudice to any set-off or other defense existing at the time of, or before notice of, the assignment; but this section shall not apply to a negotiable promissory note or bill of exchange transferred in good faith and upon

good consideration before due.' Nothing could be plainer or more positive than this provision. As we understand it, the debtor, in executing such securities, gives no authority expressly or impliedly in fact or in law, that they may be sold at all; and, if they are sold, the purchaser is notified by the law that he takes them at his peril under the principle of caveat emptor."

All the other cases hereinabove cited simply reaffirm this doctrine, and there are no South Carolina cases which I have been able to find in which the mortgagor has been denied the right to set up against the assignee of a mortgage any *bona fide* defense which he had against the original mortgagee prior to the notice of assignment.

V. To the conclusiveness of the findings hereinabove 3-5 set forth, the plaintiff offers certain exceptions, all of which are in my opinion unfounded, both in fact and in law.

(a) It is first contended that no evidence of the consideration for the execution of the bond and mortgage can be received by the Court, as receipt of such evidence would be in violation of the parol evidence rule. As to this I hold and find that the evidence in this case, to the effect that the consideration for the execution of the bond and mortgage was the purchase price of the house and lot paid by Barron does not in any way vary the terms of the written instrument, but simply explains the nature and origin of the debt of Frederick to Barron. Furthermore, it is elementary that parol evidence may be given to explain the consideration for the execution of written papers. Jones on Evidence, §§ 468-471; *Fullwood v. Gladden*, 2 S. E., 565; 26 S. C., 312. Furthermore, the defense in this case is not a matter of evidence, but is a substantial defense, based upon express provisions of our law. S. C. Code, 1922, § 355, and cases above cited.

(b) It is next contended that the defense in this case cannot be sustained, for the reason that Barron's indebted-

ness to Frederick did not mature or become payable until after an accounting and settlement between Barron and Frederick.

As to this contention I find that in the first place it is not sustained by the evidence. The evidence showed that the commissions which were to become due to Frederick for the building of the houses were to go to repay Barron for the purchase price of the lot. The commissions therefore which became due to Frederick were due and payable certainly within a reasonable time after the completion of the houses and became payments *pari passu* with the progress of the work *pro tanto* upon Frederick's indebetedness to Barron; that is, upon the bond and mortgage. The houses were all finally built and completed in the spring of 1922, at which time Barron's indebtedness to Frederick exceeded the sum of $3,500, and was more than sufficient to have paid in full Frederick's debt to Barron on the bond and mortgage. There was no agreement between Barron and Frederick that Barron's debt to Frederick should become due only after a settlement and accounting between them, nor could any such agreement have the effect in this action of depriving Frederick of his right to set up that defense to the plaintiff's action on the bond and mortgage. The construction sought to be placed on the facts is entirely illogical and unreasonable. No settlement can now possibly be had with Barron, who is dead, and under the provisions of our Code it is perfectly permissible for Frederick in this action to set up any defense which he would have against Barron without making Barron's administrator a party. To place such a construction upon the facts would therefore have the practical effect of depriving the defendant of a right which is expressly recognized by the Code law of this State. Code, 1922, § 355.

Furthermore, in view of the insolvency of Barron's estate, this defense as an offset would be good, even though Barron's obligations to Frederick were not yet due. 34 Cyc., 674.

442 WOODROW *v.* FREDERICK

(c) It is next contended that Frederick, by executing the bond and mortgage and placing the same in Barron's hands, and thereby enabling the said Barron to assign them to the plaintiff as if they were valid instruments, is now estopped from setting up this defense against the plaintiff. As to this contention I hold and find that the defendant Frederick's right to set up his defense in this action is a plain legal right not dependent on equitable principles. Code, 1922, § 355, and cases above cited.

This contention is based principally upon the case of *Montgomery v. Scott,* 9 S. C., 20; 30 Am. Rep., 1, but in that case the plaintiff had executed a mortgage directly in favor of the defendant, being induced to do so by the fraud of a third party, and no question of an assignment of the bond and mortgage being subject to equities was involved; the Court sending the case back for a new trial to determine the question whether or not the plaintiff had herself been guilty of negligence in executing the bond and mortgage direct to the defendants. The other cases cited by the Master (*Maxwell v. Foster,* 45 S. E., 927; 67 S. C., 385. *Westbury v. Simmons,* 35 S. E., 764; 57 S. C., 467. *Anderson v. Citizens' Bank,* 81 S. E., 158; 97 S. C., 453. *State Bank v. Cox,* 11 Rich. Eq., 344; 78 Am. Dec., 458. *Middleton v. Cockfield,* 102 S. E., 328; 113 S. C., 282. *Martin v. Palmer,* 104 S. E., 308; 115 S. C., 17), are entirely inapplicable to the facts of this case, and only serve to show the true principle of estoppel, in that in every case the party estopped had done something *after the execution* of the paper in question to *mislead the other party.*

Furthermore, I hold and find that an estoppel cannot arise from mere silence and inaction, and that, in order to constitute an estoppel there must have been some positive encouragement or participation by the defendant in inducing the plaintiff to purchase the bond and mortgage herein sued upon. *Lites v. Addison,* 3 S. E., 214; 27 S. C., 226, at pages 231, 232. *Stevenson v. Bethea,* 69 S.

E., 99; 79 S. C., 487. *Scarborough v. Woodley*, 62 S. E., 405; 81 S. C., 329. *Chambers v. Bookman*, 46 S. E., 39; 67 S. C., 432, at pages 450-454.

The evidence, however, shows conclusively and without contradiction that the defendant Frederick, not only never encouraged Mrs. Woodrow to purchase the bond and mortgage or participated in such, but that he did not even know and never was notified of the alleged assignment until after the death of Barron. I further find and hold that the defendant Frederick was not guilty of any negligence in executing the bond and mortgage or in failing to have the bond and mortgage satisfied on the courthouse records. 3 Jones on Mortgages, p. 53; *Magie v. Reynolds*, 26 A., 150; 51 N. J. Eq., 113.

Nor can the mere signing and executing of a bond and mortgage amount to an estoppel, as otherwise bonds and mortgages, which are universally treated as non-negotiable instruments, would become in effect negotiable. 2 Pomeroy's Eq. § 711; *Moffatt v. Harden*, 22 S. C., 9. *Pittman v. Raysor*, 27 S. E., 475; 49 S. C., 469.

I further find that, as between the defendant Frederick and the plaintiff, Mrs. Woodrow, the equities as well as the law are in favor of Frederick. Frederick on his part did nothing whatever to mislead Mrs. Woodrow, and in fact knew nothing of her claims, gave no authority expressly or impliedly to Barron to assign the bond and mortgage, and furthermore had a right to rely on the provision of the law that, even if the bond and mortgage were assigned, the assignment would be subject to his equities and defenses as against Barron. On the other hand, common prudence would have required Mrs. Woodrow, or her attorneys, to make some inquiry of Frederick as to the validity of the mortgage, and the burden was on her to notify Frederick of the assignment. *Bank v. Gadsden*, 33 S. E., 575; 56 S. C., 313.

Furthermore, by constituting Barron and his law firm her agents for the collection of the interest on this, and on her other loans, and by accepting the interest on this loan from Barron without its being paid by Frederick, the plaintiff must be held to have been affected by all the knowledge obtained by Barron and his firm that the interest was not being paid by Frederick but by Barron, and that there was nothing due on the bond and mortgage. Pomeroy's Equity, § 637.

VI. For all of these reasons I hold and find that the defense, as set up in the answer, is fully sustained by the law and the facts, and that the defendant Frederick is entitled to have the bond and mortgage declared paid and delivered up to him fully satisfied and discharged.

It is therefore ordered, adjudged, and decreed, that the defense set up in the answer be and hereby is fully sustained; that the bond sued on in the complaint is hereby declared to be fully paid and the mortgage securing same satisfied and discharged, and that the Master be and hereby is directed to mark the bond paid and the mortgage satisfied on the records of the Court and deliver up the same so marked "Paid and satisfied" to the defendant Frederick or his attorneys.

*Mr. Jas. S. Verner,* for appellant, cites: *Assignee of non-negotiable paper takes subject to equities:* Code Civ. Pro., 1922, Sec. 355. *Maker estopped to deny liability:* 123 S. C., 501; 113 S. C., 282; 97 S. C., 453; 79 S. C., 478; 67 S. C., 377; 57 S. C., 481; 9 S. C., 20; 4 Rich. Eq., 105. *Party signing paper deemed to know its contents:* 126 S. C., 205; 124 S. C., 211; 123 S. C., 501. *Party seeking relief from his contract must show absence of negligence in, entering into it:* 115 S. C., 452; 110 S. C., 421; 108 S. C., 411; 108 S. C., 56; 101 S. C., 236; 9 S. C., 20. *Case distinguished:* 22 S. C., 9. *Fraud in inducement to contract:* 117 S. C., 391; 87 S. C., 331. *Knowledge of falsity of statement necessary element of fraud:* 78 S. C., 482; 61 S. C., 190; 59 S. C., 399; 58 S. C., 59. *Prior or con-*

*temporaneous parol agreements varying written agreements:*
121 S. C., 437; 120 S. C., 375; 120 S. C., 211; 112 S. C.,
343; 104 S. C., 451; 63 S. C., 406; 24 S. C., 124; 12 S. C.
L., 21; 1 S. C. L., 307; 22 C. J., 1097. *Knowledge gained
by agent acting adversely not imputed to principal:* 74 S.
C., 368; 33 S. C., 473.

*Messrs. Melton & Belser,* for appellant, cite: *Assignee
of non-negotiable paper takes subject to equities:* 22 S. C.,
9; 1 Rich. Eq. 49; Code Civ. Pro., 1922, Sec. 355; 2 R. C.,
629; 2 Jones on Mortgages, Sec. 842; 2 Pom. Eq. Juris.,
Sec., 704. *Parol testimony to explain consideration of
written contract:* 26 S. C., 312; Jones on Evidence, Sec.
468. *Maker not estopped to deny liability:* 49 S. C., 496;
22 S. C., 9; 2 Pom. Eq. Juris., Sec. 711. *Failure to have
bond and mortgage cancelled of record does not raise
estoppel:* 3 Jones on Mortgages, Sec. 53. *Knowledge of
agent imputed to principal:* 56 S. C., 373; 2 Pom. Eq.
Juris., Sec. 637; 2 Jones on Mortgages, Sec. 53. *Cases dis-
tinguished:* 115 S. C., 17; 113 S. C., 282; 97 S. C., 543;
67 S. C., 285; 57 S. C., 464; 11 Rich. Eq., 344.

January 25, 1926.

The opinion of the Court was delivered by MR. JUSTICE
COTHRAN.

The decree of his Honor, Judge Townsend, is entirely
satisfactory.

The judgment of this Court is that the judgment of the
Circuit Court be affirmed.

MR. JUSTICE MARION and MR. ACTING ASSOCIATE JUS-
TICE R. O. PURDY concur.

MR. JUSTICE WATTS and MR. ACTING ASSOCIATE JUS-
TICE C. J. RAMAGE dissent.

MR. CHIEF JUSTICE GARY did not participate.