14327

DANGERFIELD v. BROWN *ET AL.*

(186 S. E., 641)

Before Dennis, J., Charleston, March, 1935.

*Messrs. Hagood, Rivers & Young,* for appellant,

*Messrs. Mitchell & Horlbeck* and *E. L. Willcox,* for respondent,

July 7, 1936.

The opinion of the Court was delivered by Mr. Justice Bonham.

The "statement" set out in the record states so clearly and succinctly the cardinal facts which preceded the litigation that we reproduce it here:

"This action was commenced about December 20, 1932, and is for foreclosure of a purchase-money mortgage given

by the defendant R. S. Cathcart to Mary L. McAlister dated 23rd December, 1920, recorded in the R. M. C. office for Charleston County on the same date in Book L-28, page 250, and assigned to the plaintiff on 22nd December, 1923, which assignment was recorded on the same day.

"The mortgaged premises were conveyed by Cathcart to James S. Farnum on 30th April, 1921, for $10.00 and the assumption of the outstanding mortgage on the premises, which deed was recorded on the same day in the R. M. C. office aforesaid in Book F-31, page 162.

"The complaint, hereinafter set out, is the usual form of a complaint for foreclosure.

"The defendant Clara Farnum Brown, who is the widow of James S. Farnum, and to whom he devised the mortgaged premises, defaulted.

"The defendant R. S. Cathcart answered and set up as a defense that in all the transactions with Mary L. McAlister, both in the purchase of the mortgaged premises and in the giving of the bond and mortgage, he was acting solely as the agent of James S. Farnum, which fact was made known at the time to Mary L. McAlister and that the plaintiff bought the bond and mortgage subject to all the equities between the original parties and that the debt was not his debt but the debt of Farnum. He did not oppose the foreclosure of the mortgage and sale of the premises but only a money judgment against himself.

"By order dated 20th February, 1933, the case was referred to the master under a general order of reference."

We supplement the "statement" by a recital of the further facts, gathered from the record and stated as follows:

James S. Farnum, a citizen of Charleston, was a man of considerable means; he desired to purchase the real estate covered by the mortgage herein sought to be foreclosed. It was owned by Mrs. Mary L. McAlister. The Farnums and McAlisters were not on friendly terms. Being apprehensive that Mrs. McAlister would not sell the property to him,

Farnum procured his friend, Dr. Robert S. Cathcart, who was also the friend of Mrs. McAlister, to purchase the property for him; this Dr. Cathcart did for the price of $20,000; one-fourth cash, the balance in three equal annual installments, with interest at 6 per cent., secured by bond and mortgage of the premises. Dr. Cathcart disclosed to Mrs. McAlister that in the purchase of the property he was acting for James S. Farnum. He signed the agreement of sale and purchase as agent. The bond and mortgage were signed R. S. Cathcart. The cash portion of the purchase money was paid by the check of James S. Farnum, and the subsequent payments, which reduced the amount of the mortgage debt to less than $5,000.00, were made by Mr. Farnum. The transaction of purchase was consummated the 23rd day of December, 1920, and the mortgage executed as of that date. April 30, 1921, Dr. Cathcart conveyed the mortgaged property to James S. Farnum, the stated consideration being "Ten ($10.00) Dollars and the assumption of the present outstanding mortgage upon the premises." This deed was recorded by and was delivered to Messrs. Mitchell & Horlbeck, the attorneys who represented the plaintiff as guardian when she purchased the bond and mortgage herein involved from Mrs. McAlister December 22, 1923.

Dr. Cathcart had no personal financial interest in the transaction, and received no benefit nor gain from it; he never had possession of the premises. Mr. Farnum died in 1922. He collected all the rents from the date of the transfer by Mrs. MsAlister, and paid all the taxes; made the initial payment for the property and all installments of principal and interest up to the time of his death. By his will he devised this property to his widow, Mrs. Clara Farnum, who subsequently married Mr. Brown. After the death of Mr. Farnum, she continued to make the payments on the mortgage debt up to December 22, 1931. On or about the 22nd day of December, 1923, Mrs. McAlister assigned the bond and mortgage to Mrs. Leila G. Dangerfield as guardian of Edward A. Bur-

dette, a minor who died before attaining his majority, and Mrs. Leila G. Dangerfield was duly appointed administratrix of his estate and in the capacity brings this action for foreclosure.

It appears that no demand for the payment of the bond or interest was ever made of Dr. Cathcart by Mrs. McAlister, or by Mrs. Dangerfield as the assignee thereof.

The complaint is in the usual form of foreclosure. Mrs. Clara Farnum did not answer the complaint. Dr. Cathcart answered setting out that he acted as agent for James S. Farnum in the purchase of the property and in executing and delivering the bond and mortgage to Mary L. McAlister, who at the time of the transaction knew and agreed thereto that the debt was the obligation of James S. Farnum, and thereafter recognized that it was the debt of James S. Farnum by always calling on him, and never calling on Dr. Cathcart, for the payments made thereon. And that the plaintiff when she purchased the bond and mortgage purchased it before its maturity, and took it subject to all the equities between the original parties, and he alleges on information and belief that plaintiff, when she purchased the bond and mortgage, knew that it was the debt of James S. Farnum. Dr. Cathcart does not object to the foreclosure and sale of the property, but does object to a deficiency judgment against him.

The case was referred to the Master under an order of general reference, who in due time, after taking the testimony, made his report to the Court of Common Pleas, by which he held Dr. Cathcart personally liable on the bond for any deficiency due on the mortgage indebtedness, and recommends the foreclosure of the mortgage and sale of the mortgaged premises.

The defendant R. S. Cathcart excepted to the Master's report on the following grounds:

"1. That the testimony shows that both Mary L. McAlister, the owner and holder of the bond in this suit, and

the said R. S. Cathcart knew and recognized the fact that the bond and mortgage were in truth and in fact the bond and mortgage made by James S. Farnum through an agent, and the plaintiff herein took it subject to all equities as between the parties.

"2. That from the time of the purchase of the said mortgage by the late Edward A. Burdette that the said plaintiff and her predecessors recognized that the bond was the obligation of the late James S. Farnum and are estopped now from claiming the same to be the bond of the defendant R. S. Cathcart.

"3. That the said plaintiff as guardian purchased the said bond on the day before the said bond was due, to wit, on the 22nd day of December, 1923, with knowledge that James S. Farnum had assumed the payment of the said bond, which was duly recorded, and thereafter looked only to the said James S. Farnum or his estate for the payment thereof and made no demand on the said R. S. Cathcart for any payment thereon and forebore from demanding or collecing payment from the said James S. Farnum in his lifetime, or a sale of the said property when the same would have brought the amount of the mortgage due thereon, and allowed taxes to accumulate thereon until it is doubtful whether the said property will be sufficient to pay the amount due on the said bond secured by the said mortgage."

The Honorable E. C. Dennis, presiding in the Court of Common Pleas for Charleston County, confirmed the report of the Master, and from this order the defendant R. S. Cathcart appeals to this Court.

The exceptions are more numerous than those filed to the report of the Master, but they are in effect but an amplification of those and more in detail thereof.

The appellant states the questions to be considered in this wise:

"1. (a) That Cathcart disclosed to Mrs.· McAlister (to whom the bond and mortgage were given) that he was acting as agent; that he disclosed to her his principal and therefore was not in any way obligated to her.

"(b) That a purchaser of a bond (a non-negotiable instrument) takes it with all the equities and rights existing between the original parties thereto, and the purchaser stands in the shoes of the original obligee, and therefore the plaintiff has no claim on the defendant Cathcart for a personal judgment.

"2. That the plaintiff made a new contract with Mrs. Brown and so released Cathcart from any obligation, if any ever existed.

"3. That the plaintiff knew, or had cause to know that the debt was the debt of Farnum and not that of Cathcart.

"4. That by her conduct the plaintiff lulled the defendant Cathcart to sleep and is estopped now to make any claims against him."

The testimony of James A. McAlister, a witness on behalf of the defendant Cathcart, was offered to prove that Mrs. McAlister was the mother of the witness and had died before the reference was held. It appears that the witness· was testifying to what occurred between his mother and Dr. Cathcart at the time the contract of sale was made. He was asked: "Q. At the time this paper was signed did Dr. Cathcart disclose to her for whom he was acting as agent?"

The objection to the testimony was: "Mr. Mitchell objects on the ground of hearsay, that Dr. Cathcart should testify to that himself and it is incompetent and irrelevant."

The witness testified on cross examination that he knew of his own knowledge the things to which he testified, as he was present at the time of the negotiations for sale between his mother and Dr. Cathcart.

The Master does not specifically pass upon this exception. He rejects the testimony on the ground that it tends to vary

the terms of a written instrument. The Circuit Judge did not allude to it in his order confirming the Master's report. It does not appear from the record that the testimony of Jas. A. McAlister or R. M. Mason was ever objected to on the ground that it tended to vary the terms of a written instrument.

If this were an action by Mrs. McAlister to foreclose this mortgage as against Jas. S. Farnum and R. S. Cathcart, surely it would be competent for Cathcart to show that at the time the bond and mortgage were executed by Cathcart, Mrs. McAlister knew that he was acting as agent for Mr. Farnum; that she agreed to the arrangement and accepted Farnum as the sole debtor.

It may be argued that such a rule cannot apply in an action between the assignee of Mrs. McAlister, and the devisee of Mr. Farnum, and Dr. Cathcart. We will discuss that question later. Let it be borne in mind that the assignment was of a non-negotiable instrument, and made before the maturity thereof.

As to the objection that the testimony tends to vary the terms of a written contract in that it would substitute Farnum for Cathcart as the debtor, the obligation is to pay Mrs. McAlister a certain sum of money at certain stated times, with interest at a fixed rate. The performance of this contract is secured by bond and mortgage of real estate. The personal equation of the maker of the bond and mortgage does not enter as a primary factor in the transaction; it would seem to follow then that if the only change in the written instrument is that of the name of the maker of the instrument, and the identity of the true party in whose behalf the transaction is had is known to the party to whom the instrument is given and is agreeable to him, proof of such change does not violate the rule. In these circumstances if the word "agent" or "trustee" as descriptive of the character of the name signed to the paper is omitted, is it not

competent to prove the relationship as a part of the contract inadvertently omitted?

The strict constructionist may sometimes make a fetish of the rule which rejects evidence which it is claimed varies the terms of a written contract, and thus sacrifice the substance to the shadow.

"Where the contract on its fact is that of a person as principal, he has the burden of showing that he signed as agent for another; on the other hand when a contract is signed by one as agent of defendant plaintiff has the burden of proving, there being nothing else to show that defendant was bound, that it was the intention of the signer to bind his principal." 13 C. J., 759.

We may pause to ask how the defendant in the one instance, and the plaintiff in the other, could prove these essentials if the testimony offered to prove them be rejected on the ground that it alters or varies the terms of a written instrument?

It is true that a written instrument is presumed to contain all the terms discussed and agreed upon, but it does not always do so, and it may be shown by evidence *de hors* the written instrument that it does not.

Mr. Chief Justice McIver said in *Virginia-Carolina Chemical Co. v. Moore,* 61 S. C., 166, 39 S. E., 346, 347:

"There can be no doubt that the rule as expressed in 1 Greenl. Ev., § 275, is well settled, that 'parol, contemporaneous evidence is inadmissible to contradict or vary the terms of a valid written instrument,' though, as will be seen by the succeeding sections, this rule is subject to numerous exceptions."

The case of *Earle v. Owings, 72* S. C., 362, 51 S. E., 980, 981, shows in the facts a striking similarity to these in the present case. It appears that the plaintiff deeded fifty acres of his land to Samuel Owings, who executed a mortgage to plaintiff covering the credit portion of the purchase money. The action was to foreclose this mortgage. The defendants

answered separately, alleging that plaintiff divided fifty acres of his land into five lots and sold said lots to Samuel Owings, Jacob Harris, Wilson Early, and James Harris, and by agreement of all the parties the deed to the whole fifty acres was made to Samuel Owings for the benefit of himself and all the other purchasers. It was alleged further that it was agreed by all the parties that as each defendant purchaser paid plaintiff for his or her lot Owings was to execute a deed for the same to the purchaser and the mortgage was to be released thereon by the plaintiff. When it was offered to prove these facts, the testimony was rejected on the ground that it tended to contradict or vary a written instrument. The Supreme Court, by Mr. Justice Jones, said:

"We think the testimony admissible. The testimony showing why the deed was executed to Owings, instead of to each defendant separately, and why the mortgage was executed by defendant Owings on the whole land, *falls within the rule which permits parol testimony to show the object or purposes with which the parties executed the instruments.*" Citing *Moses v. Hatfield,* 27 S. C., 324, 3 S. E., 538; *Brick v. Brick,* 98 U. S., 514, 25 L. Ed., 256; 1 Elliott on Evidence, § 584.

"The testimony that plaintiff agreed to release the mortgage on each separate lot, as the purchase money therefor was paid by said purchasers, *falls within the rule that when the written evidence of the contract does not contain all the terms of the TRANSACTION between the parties, parol evidence, which does not really contradict or vary the writing, is admissible for the purpose of showing a contemporaneous, collateral, and independent agreement.*" (All italics added.) Citing *Virginia-Carolina Chemical Co. v. Moore, supra, Ashe v. Carolina & N. W. R. Co.,* 65 S. C., 134, 43 S. E., 393.

So in the present case the rejected testimony was admissible to show why the deed was made to Dr. Cathcart and why he executed the bond and the mort-

gage to Mrs. McAlister, and for the purpose of showing "the contemporaneous collateral and independent agreement," or understanding that Mrs. McAlister would, and did look to Mr. Farnum for the payment of the mortgage debt. This "does not really contradict or vary the writing."

The case of *Moffatt v. Hardin,* 22 S. C., 9, is replete with declarations by this Court of principles of law applicable to our Court. Upon the question of admissibility of evidence, which we are now considering, this Court, adopting the decree of the Circuit Judge Kershaw, as the opinion of the Court, said this:

"Plaintiffs also objected to the competency of Mr. Hamilton to testify to the declarations of Melton, and transactions beween him and Mrs. Hardin. * * * The objection that Hamilton's testimony tended to vary the written contract to which he testified is not tenable. He was the subscribing witness to the deed, and was competent to testify to the conversation between the parties at the time it was executed. *Spencer v. Bedford,* 4 Strob., 96. The testimony was explanatory of the transaction. It does tend to show that no money passed between the parties, but the receipt which it appears to contradict had not been produced at the time the objection was made. But if it had been, the testimony would have been admissible. *Trimmier v. Thomson,* 10 S. C. [164], 190. I therefore conclude that Mr. Hamilton's testimony was properly admitted by the referee."

In the case of *Ashe v. R. Co.,* 65 S. C., 134, 43 S. E., 393, 394, it appears that by means of a correspondence carried on by letters the railroad company contracted with Ashe to haul to York a train load of wood for the price of $55.00; that when the wood arrived at York, the railroad company refused to deliver it to Ashe because the freight was not paid in advance of completion of the work. Ashe sued for damages; a nonsuit was granted and Ashe appealed. The ground upon which the motion for nonsuit was granted is thus stated in this Court's opinion:

"In other words, the ground of the defendant's motion for nonsuit was that the entire contract was reduced to writing, and that its refusal to deliver the wood until the plaintiff paid the $55.00 was neither a violation of its legal duty nor of any contract between the plaintiff and the railway company."

The plaintiff offered testimony to prove a subsequent parol agreement that the freight charges need not be paid until the work was done. This was admitted over the objection of the defendant.

In passing on the motion for nonsuit, the Circuit Judge granted it "on the ground that the written correspondence by which the parties entered into the contract was silent as to the time when the $55.00 for hauling the wood was to be paid, and that the defendant therefore had the right to demand the cash at any time."

This Court said in effect that there was evidence of a subsequent parol contract that the defendant did not have the right to demand cash in advance, and the judgment of nonsuit was reversed.

In the case of *Irving Trust Co. v. Townsend et al.,* 65 F. (2d), 406, 408, the Circuit Court of Appeals for the Second Circuit dealt with the question we are considering. In that case it appears that W. W. Townsend was the president of W. W. Townsend & Co., Inc., doing business in New York City in 1929. The corporation became interested with one Whist in a project to buy up or secure options on the stocks of certain foreign insurance companies. When purchased, these stocks were to be turned over to a new company. The money to pay for these stocks was to be obtained by the sale of stock of the new company. In pursuance of their purpose, Townsend and Whist went to Sweden to negotiate with one Hirsch for an extension of an option on the stock of the Malaren Insurance Company. Hirsch was unwilling to extend the option, but he was willing to extend the time for the payment of the stock if Town-

send would personally agree to buy it. Up to this point Townsend was acting solely as the representative of the Townsend Corporation and within the scope of his authority. Rather than lose the chance to purchase the stock, Townsend entered into a written agreement with Hirsch which embodied the terms of sale and purchase. This was signed by Townsend in his own name, and accepted by Hirsch in writing. In the financial depression of 1929, the Townsend Corporation was declared bankrupt. Hirsch threatened to sue Townsend individually. Whist effected a settlement with Hirsch for the sum of $10,000.00, of which sum Whist paid $5,000.00 and the Townsend Corporation paid the other $5,000.00 with money of the corporation before it was adjudged to be bankrupt.

It is conceded that the corporation was insolvent when this payment was made. The trustee in bankruptcy sued the corporation *et al.,* to recover this sum of $5,000.00. The Court said:

"Since Hirsch knew from the beginning that the stock was being purchased by Townsend for the Townsend Corporation which was to have it on the contract terms, it may well be that the known intent of Townsend to act only as the agent of the bankrupt was from the start sufficient to defeat any attempt by Hirsch to hold Townsend as a principal."

Note the striking similarity in the facts of that case and those in the case we are considering. Because of the fact that Hirsch knew from the start that Townsend was acting as the agent of the corporation, he could not hold Townsend liable as principal, although Townsend had signed the written contract in his own name. So here, since Mrs. McAlister knew from the start that Dr. Cathcart was acting as agent for James S. Farnum, she could not have held Cathcart liable as principal, although he signed his name to the bond and mortgage without affixing anything to indicate his agency.

Respondents contend that Dr. Cathcart was negligent in not having inserted in the conveyance to him and/or his to Farnum, or in the bond and mortgage a statement to show that he was acting for Farnum, and having neglected to do so, he is now estopped by his neglect. In other words, the respondents seem to argue that Dr. Cathcart was bound to disclose in the written agreements the principal for whom he was acting. We do not so construe the law.

In 1835 Judge Richardson for the Court of Appeals in the case of *Waddell v. Mordecai,* 3 Hill, 22 (Vol. 2, page 366), declared the law as follows:

"The agent must declare his principal, at the time of the contract, so that the opposite party may know, not only that the agent does not bind himself, but what party he trusts. Why must he know the party? Clearly that he may exercise his own judgment as to whom he will trust, in the first instance; and that he may have recourse, finally, to the principal to whom the agent has imputed the contract. It seems to me then very plain, that upon a just exposition of the rule, where more precise information is wanted than that of a general designation of the principal made at the time of the contract, and which may be required, in the course of events, in order to proceed in a suit against the principal, or for other purpose, such extra information should be sought for by the party requiring it."

Dr. Cathcart complied with this rule. At the time of making the contract, he informed Mrs. McAlister that he was acting for J. S. Farnum. Evidently she acquiesced in and acted upon this information since all of her subsequent dealings, with respect to the bond and mortgage, were with Farnum. It is a fair inference that Mrs. Dangerfield, when she purchased the bond and mortgage, knew that Farnum was connected in some way with this transaction. The entries of payments on the bond and mortgage must have apprised her that Farnum made the payments. She has never demanded payment of interest or principal of Cathcart, since

she bought the papers from Mrs. McAlister. After the death of James S. Farnum in 1922, Mrs. Farnum continued the payments up to December 22, 1931. It is inconceivable that Mrs. Dangerfield had no intimation of these facts. Yet from 1922, the date of Farnum's death, up to the 20th of December, 1931, when Mrs. Farnum ceased to make payments on the debt, she did not once notify Dr. Cathcart that she held him liable for the payment of the obligation. Indeed, the beginning of this action was the first intimation that he had that he was looked to for payment of the obligation.

In the case of *Pope & Fleming v. Harter*, 66 S. C., 54, 44 S. E., 407, 408, the question of the disclosure of the principal by the agent was discussed. Pope sued W. E. Harter and Julia E. Harter; W. E. Harter demurred on the ground that it appears upon the face of the complaint that the goods and merchandise mentioned in the complaint were sold to the defendant Julia E. Harter, through her agent W. E. Harter, and that the defendant W. E. Harter assumed no liability for the same. The Circuit Judge sustained the demurrer, and plaintiff appealed on the ground that the Circuit Judge should have held "that, while the fact that W. E. Harter was doing business as agent was known at the time of the sale, the name of his principal was not disclosed, and hence he is liable as principal upon such contract of sale." The Supreme Court affirmed the judgment sustaining the demurrer, because plaintiff's complaint alleged that W. E. Harter was, when the goods were purchased, the agent of Julia E. Harter. The Court said:

"If in the complaint the plaintiffs had stopped by alleging that W. E. Harter, agent, had purchased the goods, that he did not and never has disclosed as agent for whom he had purchased the goods, the defendant W. E. Harter could not have successfully demurred."

The only logical corollary to be deduced from these authorities is that inasmuch as Dr. Cathcart, at the time of the making of the contract, informed Mrs.

McAlister that he was acting as agent for James S. Farnum, and Mrs. McAlister acquiesced in the arrangement, accepted Farnum as the debtor, and ever after dealt with him alone, Cathcart cannot now be held liable.

It is argued, however, by the respondent, the assignee of Mrs. McAlister, that she is a purchaser for value, without notice of the understanding between the contracting parties and that she is not bound by it. We do not concur in this contention.

This is a non-negotiable paper. Section 398, Code 1932, is in these words:

*"Assignment of thing in action.*—In the case of an assignment of a thing in action, the action by the assignee shall be without prejudice to any set-off or other defense existing at the time of, or before notice of, the assignment; but this section shall not apply to a negotiable promissory note or bill of exchange, transferred in good faith, and upon good consideration, before due."

In the case of *Da Costa v. Shrewsbury,* 1 Bay, 211, it appears that Da Costa sold a tract of land to Shrewsbury which was heavily mortgaged, which fact Da Costa concealed from Shrewsbury. Da Costa sold the bond to M'Whann who inquired of Shrewsbury before buying the bond to ascertain if there were any discounts against it, and was informed that there were none. When Shrewsbury learned of the mortgages, he refused to pay the bond. M'Whann sued in the name of Da Costa. The Court composed of the Chief Justice and Associate Judges Burke and Bay said this:

"The plaintiff ought not to recover in this action. The law is clear, that every person who takes an assignment of a bond, must take it subject to all the equity and rules of law, to which it would have been liable and subject, in the hands of the obligee."

Appended to the report of this case is the following notation:

"Since the determination of the above case, an act of the legislature of this state has enabled the assignee of a bond or note, etc., to bring an action in his own name; subject, however, to all the rules of equity, etc.; as if it had remained in the hands of the original obligee."

In the case of *Maybin v. Kirby et al.,* 4 Rich. Eq., 105, Chancellor Wardlaw, on Circuit, announced the rule embodied in the second syllabus as follows:

"The assignee of a chose in action is not within the rule which protects a purchaser for valuable consideration, without notice: the assignee takes only such interest as the assignor has, and is bound by all the equities binding on the latter."

The Court of Appeals, consisting of Chancellors Job Johnston, Dunkin, Dargan, and Wardlaw, affirmed and adopted this declaration of the rule.

In the somewhat well-known case of *Moffatt v. Hardin,* 22 S. C., 9, Judge Kershaw wrote the decree on Circuit, and was affirmed by the Supreme Court; from that case we quote:

"But the bond and mortgage assigned here were not negotiable securities transferred before due, but mere choses in action, and very different principles apply. They are not subject to the doctrines of implied warranty and of purchaser for valuable consideration without notice. *Maybin v. Kirby,* 4 Rich. Eq. [105], 116.

"The books are full of cases upon the subject, but we are not aware that the general doctrine is anywhere stated with more clearness than by Judge Butler in the case of *Hodges v. Connor,* 1 Speers [120], 123: 'This case, according to the legal character and purport of the paper sued on, must be regarded as a contest between the original parties to it. That is, the intermediate holders have acquired no higher rights, nor should they occupy any better position than the original payee.'

"This principle has been expressly embodied in section 133, Revised Code, which declares that, 'In the case of an

assignment of a thing in action, the action by the assignee shall be without prejudice to any set-off or other defence existing at the time of, or before notice of, the assignment; but this section shall not apply to a negotiable promissory note or bill of exchange transferred in good faith and upon good consideration before due.' Nothing could be plainer or more positive than this provision. As we understand it, the debtor, in executing such securities, gives no authority expressly or impliedly in fact or in law, that they may be sold at all; and if they are sold, the purchaser is notified by the law that he takes them at his peril under the principle of *caveat emptor.* * * *

"Mr. Pomeroy does say that, in reference to some kinds of securities, such as certificates of stock, which are of a *quasi*-negotiable character, the doctrine of estoppel has been held to apply in certain cases between assignor and assignee; but he denies its application between the debtor and the assignee. After discussing the whole subject he sums up as follows: 'All defences, either legal or equitable, in favor of the debtor himself against the original creditor at the time of the assignment, or of notice to him of the assignment of a non-negotiable thing in action, will avail against the assignee, who seeks to enforce the demand against such debtor,' etc. Pomeroy's Rights and Remedies, § 162."

The case of *Woodrow v. Frederick,* 133 S. C., 431, 131 S. E., 598, 603, is so strikingly like our case in the principles of law involved as to be practically decisive of our case; therefore we have quoted extensively from the able decree of Judge Townsend on Circuit which was adopted and affirmed by this Court in this significant language: "The decree of his honor, Judge Townsend, is entirely satisfactory."

As a preliminary statement, we quote from appellant's brief:

"In the case of *Woodrow v. Frederick,* 133 S. C., 431, 131 S. E., 598, the facts were that Frederick got Barron to buy a lot for him; Barron did this; conveyed the lot to Frederick and took his bond, secured by a mortgage of the

lot for the full amount of the purchase price. Frederick was a carpenter and was to pay Barron by the commissions he would earn from Barron by building certain houses for him. Frederick fulfilled his part of the agreement and the commissions earned were more than the debt. The two never had a final settlement or accounting. The bond and mortgage were dated 10 December 1920, Barron for full value assigned them to Mrs. Woodrow, the plaintiff. Frederick was not notified of the assignment. Barron paid the interest to Mrs. Woodrow, although Frederick never paid Barron anything."

From the decree of Judge Townsend:

"IV. As a matter of law, I hold and find that the bond and mortgage herein sued upon are nonnegotiable instruments, and as such they are subject in the hands of Mrs. Woodrow as the assignee of the mortgagee, Charles H. Barron, to all the equities and defenses existing between Charles H. Barron, mortgagee, and the defendant Frederick, mortgagor. Under the facts above found I find that there would be nothing whatsoever due to Barron on the mortgage, so that there is nothing due to the plaintiff in this case, but that the defendant on the contrary is entitled to have the bond and mortgage marked 'Paid and satisfied' on the records.

"The principle of law, that the assignee of a nonnegotiable chose in action takes it subject to all equities and defenses which could have been set up against it in the hands of the assignor at the time of the assignment or before notice to the debtor of the assignment, is settled by an unbroken series of authorities, and has been embodied in the Code law of South Carolina. S. C. Code [Civ. Proc.], 1922, § 355; 2 R. C. L., 629, 630; 2 Jones on Mtgs., § 842, pp. 350-353; 2 Pomeroy's Eq. Juris., § 704, pp. 1415-1419. * * *

"The evidence, however, shows conclusively and without contradiction that the defendant Frederick, not only never encouraged Mrs. Woodrow to purchase the bond and mort-

gage or participate in such, but that he did not even know and never was notified of the alleged assignment until after the death of Barron. I further find and hold that the defendant Frederick was not guilty of any negligence in executing the bond and mortgage or in failing to have the bond and mortgage satisfied on the courthouse records. 3 Jones on Mortgages, p. 53; *Magie v. Reynolds,* 51 N. J. Eq., 113, 26 A., 150."

The respondent's attorneys, as did the Master, bottom their argument in great measure upon the cases of *Wallace v. Langston,* 52 S. C., 133, 29 S. E., 552, 563, and *Bank of Charleston v. Oates,* 160 S. C., 188, 158 S. E., 272.

The report of the case of *Wallace v. Langston* states the conclusion of the Court in this language:

"The judgment of this court, I think, should be that the judgment of the circuit court be affirmed; but, as the court is equally divided, the judgment of the circuit court must stand affirmed, under the constitution. Justices Pope and Gary dissent."

The opinion was delivered by Chief Justice McIver. The Court then consisted of Chief Justice McIver and Associate Justices Pope, Gary, and Jones. We frankly admit that it is reasonable to infer from the language of the Chief Justice that Mr. Justice Jones concurred with him, but the record does not show that he ever signed his concurrence.

It is patent from a close study of the Circuit decree and the opinion of Chief Justice McIver that they were impressed by the fact made patent by the appellants' own testimony that in signing the bond and mortgage they were acting as trustees "for such board of trustees, and for such uses and trusts as York, Chester, Union, and Moriah Baptist Associations, or a majority of them, *may hereafter* appoint and designate and declare." From the opinion we take:

"The Baptist associations above named could not have been the parties intended to be bound, for the undisputed evidence is that neither those associations nor the churches

composing them were corporate bodies, capable of contracting or being contracted with. It could not have been intended to bind the board of trustees referred to in the deed, for they had not then been appointed. So that it is impossible for us to conceive who else could have been intended to be bound. Indeed, even if the parol evidence offered could be regarded as competent, we do not see how it could relieve the defendants from personal liability. Surely it is not to be supposed that the plaintiffs would have parted with their property as they did without some consideration, —without some *legal* assurance that the purchase money agreed upon would be paid; and, unless defendants are held to the liability which they unquestionably assumed when they signed the bond, we do not see to whom the plaintiffs could look for the payment of the purchase money. The impression left upon our minds by a careful study of the testimony is that all parties honestly believed, at the time the purchase of the property was effected, that the purchase money would be paid by voluntary contributions from the members of the religious denomination for whose interests the defendants were acting; and so confident were they in that belief that they had no idea that the defendants would, in fact, incur any personal risk by signing the bond; but we cannot believe that any of the parties supposed, at the time, that the plaintiffs were parting with their property without any *legal* security for the payment of the purchase money. Under this view, the apparent discrepancy between the testimony of Mr. Spencer and the testimony of the defendants may be explained without the slightest imputation upon the credibility of any of the witnesses, all of whom are conceded to be persons of unquestionable credibility. We must conclude, therefore, that in the absence of any allegation or proof of fraud, which is distinctly disclaimed, the parol evidence offered was inadmissible; and, even if admissible, it is insufficient to relieve the defendants from personal liability on the bond."

In the present case Mrs. McAlister knew when the bond and mortgage were signed by Dr. Cathcart that he was acting for James S. Farnum, then a man of large wealth, and she accepted him as the person bound by the papers. Farnum made the payments on the debt during his lifetime and his wife, to whom he devised the mortgaged property, continued the payments for nine years after his death. Surely this was sufficient ratification by them of the action of Dr. Cathcart as agent of James S. Farnum.

The *Wallace v. Langston case* was decided in 1897 by an evenly divided Court. The case of *Earle v. Owings* was decided in 1904 by a unanimous Court, the Chief Justice not sitting because of illness, and it is far more in accord with the facts and principles of our case than is the *Wallace v. Langston case,* and more entitled, therefore, to our consideration.

We think that the case of *The Bank of Charleston v. Oates,* 160 S. C., 188, 158 S. E., 272, does not conflict with the views expressed hereinabove. In the *Oates case* it appears that the defendant set up the plea that he gave the bond and mortgage to the Bank of Oates for accommodation of another and received no benefit therefrom; in other words, he pleaded want of consideration; Judge Dennis on Circuit denied the right to set up such plea, and held that the defendant, Oates, having represented by his bond and mortgage that he was indebted to the Bank of Oates in the sum of $7,500.00, and having lent the bond and mortgage to the mortgagee for accommodation, made it possible for the mortgagee to induce the Bank of Charleston to accept these papers in exchange for valuable securities, and was therefore estopped to set up against the assignee that the bond and mortgage were without consideration. On appeal by Oates, this Court, through Mr. Justice Stabler, now Chief Justice, said:

"It seems to us, however, that the decision of the case must rest upon this principle, that, while one who signs

an instrument of writing under seal is allowed to show failure of consideration, he is not allowed, in the absence of fraud, to show that such instrument was without consideration, the reason being that the seal, of itself, imports a consideration."

There can be no cavil at this clear declaration of an established principle of law. But we do not see its application to the present case. The appellant here is not relying upon the plea of want of consideration, but upon the plea of agency for a disclosed principal.

We think that from the facts and circumstances elsewhere herein set out it is apparent that Mrs. Dangerfield knew, or with the exercise of ordinary care would have known, that James S. Farnum was the real debtor, and that in the purchase of the bond and mortgage from Mrs. McAlister she was in no wise influenced or misled by the fact that the bond and mortgage were executed in the name of R. S. Cathcart. For nine years after she acquired them she never demanded any payments of Dr. Cathcart; and for three years after Mrs. Farnum stopped paying even the interest Mrs. Dangerfield did not ask payment of Cathcart. Even slight care would have informed her that the taxes were not being paid, but this seems not to have directed her attention to Dr. Cathcart. It appears from the record that he did not know until this action was begun that Mrs. Dangerfield had acquired the bond and mortgage.

Mrs. Dangerfield, after acquiring the bond and mortgage, required of Mrs. Brown an agreement to pay seven per cent. as against the six per cent. provided by the bond and mortgage, without saying anything to Dr. Cathcart about it. Surely Mrs. Dangerfield is estopped now to call upon Cathcart; estopped by her own negligence, her own laches, and her own actions in the premises. To permit her to recover judgment for a deficiency against Dr. Cathcart would be inequitable, and against sound legal principle.

One is reminded of the language of Mr. Justice Richardson, delivering the opinion of the old Court of Appeals in *Waddell v. Mordecai, supra*:

"It would be to divert the primary principle of this species of action, which has been called a 'little bill in equity,' in which money shall not be recovered against equity and good conscience. This is strictly a legal view."

The judgment of this Court is that the judgment of the lower Court be reversed as to R. S. Cathcart, and the case returned to the Circuit Court with direction to enter judgment for R. S. Cathcart under Rule 27.

MESSRS. JUSTICES CARTER, BAKER and FISHBURNE concur.

MR. CHIEF JUSTICE STABLER dissents.